IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------x
                               :

M.A. ET AL.                         :                3:10 CV 1890 (JBA)
                               :

v.                                :
                               :

CITY OF TORRINGTON ET AL.     :
                               :              DATE: APRIL 20, 2011
---------------------------------------------------------x

<u>RECOMMENDED RULING ON DEFENDANTS' MOTION TO DISMISS</u>

On December 1, 2010, plaintiff J.A., the parent of minor M.A.,[1] commenced this action against defendants City of Torrington and the Torrington Board of Education pursuant to Article First, §§ 8 and 20, as amended, and Article Eighth, § 1, as amended, of the Connecticut Constitution; Connecticut General Statutes §§ 10-220, 10-231e, 10-291, 10- 207, 10-4a, 10-15, 10-157, 10-184, 10-76a, 10-76d, and 10-76h et seq., and Connecticut Agencies Regulations § 10-76a-2; the Individuals with Disabilities Education Act ["IDEA"], 20 U.S.C. § 1415 and the Individuals with Disabilities Improvement Act of 2004 ["IDEIA"], 20 U.S.C. § 1400 et seq.; and the due process clauses and equal protection clauses of the Fifth and Fourteenth Amendments to the United States Constitution. (Dkt. #1).[2] Plaintiffs bring this administrative appeal of a due process hearing officer's decision, dated November 15, 2010, in <u>Torrington Bd. of Educ. v. Student</u>, Case No.: 009-0552, which dismissed with prejudice plaintiffs' request for the hearing officer to declare, <u>inter alia</u>, that defendants improperly failed to identify M.A. as a child requiring special education and related services under Other

---

[1]M.A. is now eighteen but was a minor during all of the relevant years at issue. (Dkt. #1, ¶ 2).

[2]A redacted version of the Complaint was filed, with the original Complaint and attachment filed under seal. (Dkts. ##1, 3; <u>see</u> Dkts. ##2, 17). The Court will refer to the redacted Complaint in this Ruling.

Health Impairment for the school years of 2006-07, 2007-08, 2008-09, and 2009-10. (Dkt. #1, ¶ 8).

On March 8, 2011, United States District Judge Janet Bond Arterton referred this case to this Magistrate Judge. (Dkt. #24). Thereafter, on March 16, 2011, defendants filed the pending Motion to Dismiss, with brief and exhibits in support. (Dkt. #26).[3] Five days later, plaintiffs filed their brief in opposition (Dkt. #27),[4] and the next day, defendants filed their reply brief. (Dkt. #29). On March 24, 2011, plaintiffs filed a sur-reply brief (Dkt. #33), and the next day, defendants filed a response to plaintiffs' surreply. (Dkt. #34).

For the reasons stated below, defendants' partial Motion to Dismiss (Dkt. #26) is granted, and plaintiffs' Motion for Reconsideration (Dkt. #32) is granted in part.[5]

## I. DISCUSSION

### A. RULE 12(b)(6) STANDARD

When considering a Rule 12(b) motion to dismiss, the court must "accept as true all of the factual allegations set out in plaintiff[s'] complaint, draw inferences from those

---

[3]Attached to defendants' brief in support are nine exhibits, all of which are copies of case law. (Exhs. A-H).

[4]Plaintiff also filed a Motion for Default Entry 55(a) as to both defendants on that same day (Dkt. #28), in which plaintiffs contend that defendants' Motion to Dismiss is not an "effective" motion "that would have altered the time period for filing any [a]nswer to the complaint on or before the March 17, 2011 deadline; and in the alternative, because defendant Torrington Board of Education, failed to file any Answer to Counts One through Four" of the Complaint, plaintiffs request that the Court "immediately enter [a] judgment of default against the defendants, and in the alternative[,] against . . . defendant Torrington Board of Education . . . ." Id.

On March 22, 2011, the Clerk of Court entered an order denying plaintiffs' Motion for Entry of Default, "in light of the motion to dismiss filed on [March 16, 2011.]" (Dkt. #30).

Two days later, plaintiffs filed a Motion for Reconsideration of this Order (Dkt. #32); see note 11 infra.

[5]See note 12 infra.

allegations in the light most favorable to plaintiff[s], and construe the complaint liberally."

Rescuecom Corp. v. Google, Inc., 562 F.3d 123, 127 (2d Cir. 2009)(citation & internal quotations omitted); accord Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). To state a valid claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S.___, ___, 129 S. Ct. 1937, 1949 (2009), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Such a claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted.  See AmBase Corp. v. City Investing Co. Liquidating Trust, 326 F.3d 63, 71-72 (2d Cir.)(citations omitted), cert. denied, 540 U.S. 1017 (2003).  The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims.  Branham v. Meachum, 77 F.3d 626, 628 (2d Cir. 1996)(citation omitted).  In other words, "'the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004), quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980).

B. FACTUAL BACKGROUND

Taking the allegations in plaintiffs' Complaint (Dkt. #1) as true, the facts are as follows.  Plaintiff M.A. attended the Torringford Elementary School from August 1997 to June 2003 (Dkt. #1, ¶ 3), and when plaintiff entered the school, plaintiff's mother reported him to be allergic only to animals.  (Id., ¶ 10)(citation omitted).  The Torringford Elementary

School experienced "severe water damage and indoor mold problems" in buildings where M.A. remained in class from 1998 through June 2003. (Id., ¶ 11)(citation omitted). By October 1999, Dr. Edward Kavle[6] diagnosed M.A. with reactive airway disease, allergic rhinitis, sinusitis, and asthma; in October 1999, M.A. had pneumonia; in December 1999, Dr. Jeffrey Miller diagnosed M.A. with allergic rhinoconjunctivitis, asthma, and with extreme reaction to multiple inhalants, including trees, grass pollens, dust mites, and quite severe reaction to mold; and in March 2003, Dr. Christopher Randolph diagnosed M.A. with perennial/seasonal allergic rhinitis and asthma. (Id., ¶¶ 12-15)(citations omitted). In June 2003, Dr. Randolph informed defendant Board of Education that remediation of M.A.'s school environment was required in order for him to function on his current medication, and based on reports from the Microbial Contamination Survey of January 19, 2003, there was evidence of water damage that would make the environment hostile to a child with asthma and allergic rhinitis. (Id., ¶ 16)(citation omitted). Dr. Randolph repeated his opinion in July 2003 and during the next month, in August 2003, Dr. Santilli informed the Board of Education that indoor air quality testing "clearly show fungi" in the Torrington Middle School, such that M.A. required an "out of district placement to avoid any disruption in the education process." (Id., ¶ 18)(citation omitted).

In September 2004, Dr. Randolph informed the Board of Education of M.A.'s diagnosis and indicated that plaintiff should be restricted to a clean school environment. (Id., ¶ 19)(citation omitted). One year later, Dr. Santilli informed the Board of plaintiff's diagnosis, his treatment plan, and his opinion that M.A. must be in a healthy mold free environment.

_____

[6]Dr. Edward Kavle was the personal physician for M. A. from September 1999 through March 2003, and at that same time and to the present day, Dr. Kavle acted as the Medical Advisor for the Torrington Board of Education, pursuant to Connecticut General Statute §10-207. (Id., ¶ 32).

(Id., ¶ 20)(citation omitted). In December 2009, Dr. Santilli informed the Board that plaintiff's mother reported that M.A.'s symptoms always improved when he was away from school on weekends and on summer vacations, and that re-exposure to the allergens could cause his symptoms to worsen. (Id., ¶¶ 21-22)(citation omitted). In June 2010, Dr. Santilli and the Board's physician, Dr. Grodofsky, testified at plaintiffs' due process hearing as to the extent of M.A.'s condition. (Id., ¶¶ 23-25)(citation omitted).

Plaintiffs allege that defendants failed to implement, enforce, and abide by state and federal statutes such that Torrington Middle School was not properly maintained in that it sustained water damages from leaks in the roof and windows, mold and bacteria growth, high levels of moisture in the indoor air, poor circulation of air, asbestos, minimal ventilation rates, and broken air handlers, and the State defendants are continuing in their course of conduct in not properly maintaining that facility, and knew or should have known that the Torrington Middle and High School buildings were not properly maintained. (Id., ¶¶ 28-30, 33-35). According to plaintiffs, defendants knew or should have known that the conditions at the Torrington Middle School, and the actions and/or inactions of defendant Board in failing to properly maintain the Middle School, caused and/or exacerbated personal injuries to M.A. while he attended the school, and contributed to his inability to attend Torrington Public High School. (Id., ¶¶ 36-37).

Plaintiffs requested that defendants identify M.A. as requiring special education related services as Other Health Impaired and to provide him with a free appropriate public education ["FAPE"] for the 2003-04 school year by placing him in either another public school within the district, or in an out of district private school, but defendants refused to do so. (Id., ¶ 38; see id., ¶¶ 73, 78). Plaintiff unilaterally placed M.A. at the Chase Collegiate

School, a private school in Waterbury, Connecticut. (Id., ¶¶ 3, 40). Despite additional requests to the Board to provide M.A. with a FAPE for the 2004-05 and 2005-06 school years, the Board refused to do so, despite placing other students who suffered from similar breathing difficulties in other educational placements or out of district at their expense. (Id., ¶¶ 41-43).

Beginning in the 2003-04 school year, and continuing through the 2007-08 school year,[7] the parent repeatedly invoked her rights pursuant to IDEA, IDEIA, and Connecticut General Statutes, including but not limited to, §§10-76a, 10-76d, 10-220, 10-76h et seq. and Conn. Agencies Regs. §10-76a-2, requesting defendants to hold Planning and Placement Team ["PPT"] meetings and to identify M.A. as eligible for special education and related services due to his health impairment, to identify him as eligible for accommodations pursuant to Section 504 of the Rehabilitation Act of 1973, and to provide a FAPE to him by means, including but not limited to, out of district placement; defendants refused to do so, citing jurisdictional issues. (Id., ¶¶ 44, 60-61, 73, 78).[8] Subsequently, a due process hearing took place at which, as plaintiffs allege, defendants refused to provide plaintiffs' physician with current remediation studies, and the hearing officer refused to consider any indoor air quality issues as not relevant or within her scope of authority, to allow the parent to present any other evidence concerning the conditions of the heating, ventilation, and air conditioning systems or other indoor air quality information at the defendants' public schools,

---

[7] As stated above, this lawsuit concerns the school years of 2006 through 2010; the prior years have been included for background purposes.

[8] Thereafter, defendants contracted with a private company for testing and mold remediation; plaintiffs sought the documents, ultimately by filing a complaint with the Freedom of Information Commission, which entity subsequently ordered defendants to provide certain information. (Id., ¶¶ 46-57).

or to present certain other medical information about M.A. (Id., ¶ 61).

Following the hearing, the hearing officer determined that M.A. was not eligible for accommodations pursuant to Section 504 of the Rehabilitation Act of 1973 due to his disabilities. (Id.).[9] In March 2007 and March 2008, plaintiffs again requested defendants to identify M.A. as requiring special education and related services as Other Health Impaired pursuant to IDEA. (Id., ¶ 65). Defendants filed a motion to dismiss, which plaintiffs allege prevented them from exercising due process rights to exhaust their administrative remedies and to obtain an administrative due process hearing; defendants' motion was granted by the hearing officer and plaintiffs appealed that decision to the U.S. District Court. (Id. ¶¶ 65-68, 86-88). On June 23, 2009, United States District Judge Mark R. Kravitz remanded the case to the hearing officer for reconsideration following the U.S. Supreme Court's decision in Forest Grove School District v. T.A., 129 S. Ct. 2484 (2009). (Id., ¶¶ 69, 89). Subsequently, hearings were held, and on November 15, 2010, the hearing officer issued her decision, and the pending appeal followed. (Id., ¶¶ 70-71).[10]

Defendants move to dismiss plaintiffs' Complaint on grounds that defendant City of Torrington owed no duty to plaintiff under the IDEA (Counts One-Six); plaintiffs have failed

_____

[9]Plaintiff also filed a complaint with the State Department of Education and entered into mediation with defendants; an agreement was reached as a result of the mediation, but was never finalized. (Id., ¶ 62). Plaintiffs also filed a personal injury action against defendants in Litchfield Superior Court, seeking damages for injuries from the failure of the Board to properly maintain the school buildings; that case subsequently was withdrawn. (Id., ¶ 63). Plaintiff filed an additional action in State Superior Court against the Board, seeking compensation for the failure of defendants to provide plaintiffs with a FAPE in a safe school setting without discrimination due to their disabilities; defendants subsequently removed the action to the federal court, 3:07 CV 00841(AHN), and filed a motion to dismiss, which was granted in part and denied in part on grounds that plaintiff was required to exhaust her administrative remedies against defendants pursuant to IDEA prior to bringing an action to court for judicial relief. (Id., ¶ 64).

[10]Plaintiffs contend that "[t]his court, in remanding the case to the hearing officer, left open the ability of the parents to seek damages for . . . defendants' actions as stated above, following a decision by the hearing officer." (Id., ¶ 94).

to state a cognizable <u>Bivens</u> cause of action against either defendant under the Connecticut Constitution (Counts Five and Six); plaintiffs have failed to state a claim against defendant City of Torrington under Connecticut General Statutes §§ 10-4a, 10-15, 10-157, 10-184, 10-207, 10-220, 10-231e and/or 10-291 because the statutes do not impose a duty on the City, and plaintiffs have failed to state a claim against either defendant under these statutes because the statutes do not abrogate governmental immunity or otherwise create a private cause of action (Counts Five and Six); and plaintiffs have failed to state a 42 U.S.C. § 1983 claim against either defendant pursuant to <u>Monnell v. Dept. of Social Servs.</u>, 436 U.S. 658 (1978) (Counts Five and Six).  (Dkt. #26).[11]

In response, plaintiffs contend[12] that defendant City of Torrington is an indispensable party to this action, pursuant to Federal Rule of Civil Procedure 19, as it is the only party capable of producing revenue, and is ultimately responsible to pay for damages from the

---

[11]Defendants assert that this case should proceed solely as an administrative appeal and civil rights action under the IDEA as against defendant Torrington Board of Education only.  (Dkt. #26, at 2).

[12]As an initial matter, plaintiffs assert that this Court must deny defendants' Motion because defendants "actually filed no 'Motion to Dismiss[,]'" but instead "simply" filed a brief in support, and this brief was filed after the deadline for the filing defendants' answer lapsed, thus rendering appropriate an entry of default.  (Dkt. #27, at 1-2).  However, plaintiffs are mistaken as defendants indeed <u>have</u> filed a proper Motion to Dismiss, attached to which is a brief in support and exhibits.  (Dkt. #26).  Defendants' Motion was filed on March 16, 2011 (<u>id.</u>), one day prior to the answer deadline of March 17, 2011 set by Judge Arterton.  (Dkts. ##21-23).  Additionally, a default has not entered against defendants. (<u>See</u> Dkt. #30).  In plaintiffs' brief in opposition to defendants' Motion, and in plaintiffs' argument in support of their Motion for Reconsideration of the Clerk's denial of the Motion for Entry of Default, plaintiffs assert that the entry of default against defendant Torrington Board of Education is proper as the Motion to Dismiss only related to Counts Five and Six regarding this defendant, and thus this defendant should be deemed in default regarding Counts One through Four.  (Dkt. #27, at 3-4; Dkt. #32).  Again, plaintiffs' argument is misplaced, as defendants have properly filed a Motion to Dismiss, in which defendants seek partial dismissal of plaintiffs' claims against defendant Torrington Board of Education, prior to filing their responsive pleading.  <u>See</u> Fed. R. Civ. P. 12 (b)("A motion asserting [any of the defenses listed in Fed. R. Civ. P. 12(b)(1)-(7)] must be made before pleading if a responsive pleading is allowed.").  Accordingly, plaintiffs' Motion for Reconsideration of the Order Denying Plaintiffs' Motion for Default Entry (Dkt. #32) is <u>granted, but the underlying denial is not disturbed.</u>

actions of defendant Board of Education.  (Dkt. #27, at 4-8).   Additionally, plaintiffs argue that defendant City of Torrington had final decision making authority and exhibited a custom of conduct that allowed defendant Board of Education's inappropriate behavior to continue (id. at 8-11); defendants' contention that Counts Five and Six should be dismissed for failure to state a cognizable Bivens action, is "wholly without merit" (id. at 11-13); and plaintiffs have stated a claim under the Connecticut General Statutes as defendants may be sued "to maintain good . . . schools, to properly maintain the heating, ventilation and air conditions systems, and to provide a safe school setting, and for failure to uphold the Constitutional right of this student to an equal educational opportunity to a free public education without discrimination due to his physical disability."  (Id. at 13-18).

In their reply brief, defendants observe that plaintiffs failed to respond to defendants' argument that defendant City of Torrington owed "no duty to . . . plaintiffs to identify and/or evaluate M.A. for special education services, or to provide a FAPE[ ,]" and whether or not the City controlled the Board of Education's budget is irrelevant.   (Dkt. #29, at 2-3). Additionally, defendants assert that while plaintiffs claim in their opposition brief that they are pursuing a § 1983 action against the City based on the final decision making authority of the Mayor, the Board of Councilmen, the Tax Collector and/or the Board of Finance, these individuals are not mentioned in the Complaint, and their purported "acts" as alleged in Counts Five and Six are insufficient to establish liability under § 1983 (id. at 3-4); plaintiffs have not opposed the dismissal of plaintiffs' § 1983 claims against the Board of Education for failure to state a claim pursuant to Monnell (id. at 4); plaintiffs have not cited any precedent that allows for a private cause of action for money damages against a municipal entity (id. at 5-6); and plaintiffs have failed to state a claim under the Connecticut General

Statutes (id. at 6-7).[13]

## II. DISCUSSION

### A. CLAIMS AGAINST DEFENDANT CITY OF TORRINGTON

Plaintiffs' action is an administrative appeal of a due process hearing officer's decision, dated November 15, 2010 , in which the hearing officer dismissed plaintiffs' request for that hearing officer to declare, inter alia, that defendants improperly failed to identify M.A. as a child requiring special education and related services under Other Health Impairment for the school years of 2006-07, 2007-08, 2008-09, and 2009-10.  (Dkt. #1, ¶ 8 & Exh. A). Specifically, as stated above, in Count One, plaintiffs allege that, in violation of the IDEA, defendants denied their requests to conduct a PPT meeting to develop an Individualized Education Plan ["IEP"] for all the relevant years (Dkt. #1, ¶¶ 73-75), and in Count Two, plaintiffs contend that after the IEP meetings were requested, defendants failed to conduct an evaluation of M.A. to determine his eligibility for special education services.  (Id., ¶¶ 78-80).

The IDEA provides federal assistance for education of children with disabilities and requires that states receiving such assistance provide disabled students with a "free

_____

[13]As previously indicated, plaintiffs filed a twelve page surreply brief (Dkt. #33), in response to which defendants filed an objection on grounds that plaintiffs' submission is not permitted by the Local Rules, reply briefs are limited to ten pages, and plaintiffs have raised new arguments in their objection, none of which should be considered.  (Dkt. #34, at 1; see D. CONN. L. CIV. R. 7(d)("Reply briefs are not required and . . . [a] reply brief may not exceed 10 pages, must be strictly confined to a discussion of matters raised by the responsive brief and must contain references to the pages of the responsive brief to which reply is being made.")).

This Magistrate Judge will not address plaintiffs' new substantive arguments posited in this surreply brief other than to note that while plaintiffs extol the applicability of the three exceptions to discretionary act immunity when the identifiable person-imminent harm exception applies under Connecticut law, see CONN. GEN. STAT. § 52-557n, plaintiffs offer no support, and the Court does not find any support, for the suggestion that such immunity is applicable to a Monell claim.

appropriate public education" in the "least restrictive environment," 20 U.S.C. § 1412(a)(1), (5), and, pursuant to the IDEA, "[f]or each disabled child a school district must create an [IEP], which must include an assessment of the child's current educational performance, must articulate measurable educational goals, and must specify the nature of the special services that the school will provide." Bay Shore Union Free Sch. Dist. v. Kain, 485 F.3d 730, 732 (2d Cir. 2007)(internal quotations omitted), citing Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 53 (2005); 20 U.S.C. § 1414(d)(1)(A);[14] see also CONN. AGENCIES REGS. § 10-76d-6 (1980)("Each board of education is responsible for the identification of children requiring special education and related services.").  The IDEA includes procedural safeguards through which a child's parents may file a complaint with the State's educational agency,[15] which complaint is then resolved at an "impartial due process hearing."[16]  20 U.S.C. § 1415(b)(6); 20 U.S.C. § 1415(f).

Plaintiffs allege that defendants failed to conduct a PPT or IEP meeting, failed to conduct an evaluation to determine M.A.'s eligibility for special education services, and improperly concluded that M.A. was not eligible for services.  (Counts One, Two, Four, Six). Plaintiffs also allege that defendants improperly denied them access to a due process hearing, and then improperly held an IEP/PPT meeting and conducted an evaluation of M.A. during the due process hearing that did eventually occur.  (Counts Three, Five, Six).  As

---

[14]Under the IDEA, the IEP is developed after the "local educational agency" conducts an evaluation of the student.  See 20 C.F.R. § 1414(a)-(c).  A "local educational agency" is defined as "a public board of education . . . ."  20 U.S.C. § 1401(19)(A).

[15]Under the IDEA, a State educational agency is defined as the "State board of education . . . ."  20 U.S.C. § 1401(32).

[16]Any party aggrieved by the outcome may bring an appeal in any state or federal court of competent jurisdiction.  20 C.F.R. § 1415(i)(2); CONN. AGENCIES REGS. § 10-76h-16.

stated above, under the IDEA and the Connecticut Regulations governing the State Board of Education, it is defendant Torrington Board of Education, not the City of Torrington, that develops an IEP, establishes the PPT, and ensures a complete evaluation is conducted for each child referred under the IDEA. 20 C.F.R. § 1415; CONN. AGENCIES REGS. § 10-76d-9(a) ("Each board of education shall ensure that a complete evaluation study is conducted for each child referred who may require special education and related services."); id. § 10-76d-10 ("Each board of education shall establish a sufficient number of planning and placement teams . . . .").[17] Defendant Torrington Board of Education is the party required under the IDEA to be involved in a due process hearing. See 20 U.S.C. § 1415(f); 20 U.S.C. § 1415(c)(2)(B)(i). Appropriately so, the only defendant involved in the hearing which is appealed in the present action is defendant Torrington Board of Education; the City of Torrington was not a party to the administrative hearing. (See Dkt. #1, at 4).[18]

B. 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides "a method for vindicating federal rights elsewhere conferred," including under the Constitution. Cornejo v. Bell, 592

_____

[17]The only parties who may request a due process hearing are the parents of the child who is, or may be eligible for, special education services under the IDEA; the Commissioner of Children and Families, or her designee, on behalf of the child in the commissioner's custody; or a public agency. CONN. AGENCIES REGS. § 10-76h-2.

[18]In plaintiffs' brief in opposition, they claim that defendant City of Torrington is an indispensable party under Rule 19 of the Federal Rules of Civil Procedure because the City is the only party from whom plaintiffs may seek monetary damages, and it is the City that maintains control of all the public schools. (Dkt. #27, at 4-8). Defendants are correct, however, that plaintiffs' Complaint does not include a claim for negligent maintenance of the schools, but rather, in the Complaint, plaintiffs allege that defendants failed to identify and/or evaluate plaintiff M.A. for special education services, and failed to provide a FAPE. (Dkt. #29, at 2-3). Further, in the underlying hearing decision, which has been filed under seal, and which plaintiffs appeal in the present action, the issues all relate to whether the Board of Education, not the City of Torrington, failed to identify M.A. as OHI for the relevant years, whether it failed to provide a FAPE for M.A. for the relevant years, and whether plaintiff parent is entitled to reimbursement for M.A.'s placement at the Chase Collegiate School for the relevant years. (Dkt. #1, Exh. A, at 1-2; see Dkt. #3).

F.3d 121, 127 (2d Cir.), citing Baker v. McCollan, 443 U.S. 137, 144, n. 3 (1979), cert. denied sub nom. Cornejo v. Monn, 131 S. Ct. 158 (2010). In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a person, acting under color of state law, has deprived him of a right, privilege, or immunity guaranteed by the Constitution or Laws of the United States. 42 U.S.C. § 1983. The Second Circuit has allowed IDEA-based § 1983 claims to proceed. See A.W. v. Jersey City Public Sch., 486 F.3d 791, 799, n.12 (3d Cir. 2007), citing Weixel v. Bd. of Educ., 287 F.3d 138, 151 (2d Cir. 1987)(§ 1983 claim reinstated because plaintiff stated a cause of action under the IDEA, but did not address whether IDEA violations are actionable under § 1983); Mrs. W. v. Tirozzi, 832 F.2d 748, 754 (2d Cir. 1987)(money damages are available in § 1983 action based on IDEA violation, but no discussion of whether Congress intended § 1983 to provide remedy for IDEA violations); see J.R. ex rel. R. v. Waterbury Bd. of Educ., 272 F. Supp. 2d 174, 177 (D. Conn. 2001)(§ 1983 action allowed against a state or an agency of the state under the plain language of the IDEA. However, in this case, plaintiffs cannot establish a 42 U.S.C. § 1983 claim against either defendant as plaintiffs have failed to establish a "policy or custom" of defendants that resulted in a putative violation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

A municipality may not be held liable under the theory of respondeat superior for actions committed by their employees when such acts are not taken pursuant to a "policy or custom" established by the municipality. Id.; see DeFabio v. East Hampton Union Free Sch. Dist., 623 F.3d 71, 76 (2d Cir. 2010), cert. denied, 131 S. Ct. 1578 (2011). While a single act, "if ordered by a person whose edicts or acts may fairly be said to represent official policy, can, by itself, support a claim against a municipality[,]" Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 128 (2d Cir. 2004)(citations & internal quotations

omitted), "[t]he mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995)(citation & internal quotations omitted).

In their brief in opposition to defendants' Motion, plaintiffs claim that during each of the relevant years, defendant City of Torrington, through its agents, the Mayor and the Board of Finance, "among others, were in communication with the Board of Education regarding revenues and expenditures for the Board of Education," and while the City allocated funds for the remediation of the water damages, during the relevant years, the City "deliberately chose to follow a particular course of action[,] . . . to continue the violations of civil rights of the plaintiffs, and to continue the litigation to defend the violations of their civil rights." (Dkt. #27, at 10-11).  In their Complaint, plaintiffs allege in Counts Five and Six that defendants were improperly permitted by the hearing officer to conduct an IEP meeting and evaluation of M.A. during the due process hearing, and that defendants denied M.A. eligibility for special education, denied requests to hold IEP meetings, denied the parents a due process hearing, and denied the child a FAPE.  (Dkt. #1, at ¶¶ 133-36, 139-41).  Not only do plaintiffs fail to name any of the purported decison makers in the Complaint, plaintiffs fail to establish how any actions were taken pursuant to an official policy, regulation, or custom, or that the purported actions caused plaintiffs a denial of due process as alleged in Counts Five and Six.[19]

---

[19]Additionally, as defendants properly point out, plaintiffs did not oppose the dismissal of the 42 U.S.C. § 1983 claim against the Board of Education (Dkt. #29, at 4), which claim may be deemed abandoned.  See Brodsky v. Trumbull Bd. of Educ., No. 06 CV 1947 (PCD), 2009 WL 230708, at *9 (D. Conn. Jan. 30, 2009)(multiple citations omitted).

14

## C. CONNECTICUT CONSTITUTIONAL CLAIMS

In their Complaint, plaintiffs allege that defendants and the hearing officer violated plaintiffs' Constitutional due process rights, and the hearing officer failed to "consider and/or appropriately apply Article First, § 20 of the Connecticut Constitution . . . ."[20] (Counts Five and Six, & ¶ 139). Additionally, plaintiffs allege violations of Article First §§ 1 and 8,[21] and Article Eighth, § 1[22]. (Dkt. #1, ¶¶ 6, 9). In <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), the United States Supreme Court created a private right of action for damages for injuries sustained as a result of a Fourth Amendment violation of the United States Constitution. In <u>Kelley Property Dev., Inc. v. Town of Lebanon</u>, 226 Conn. 314 (1993), after exhaustively reviewing federal and state <u>Bivens</u> actions wherein the courts have looked at the particular circumstances of each case before deciding whether to recognize a state <u>Bivens</u> claim, <u>id.</u> at 330-39, the Connecticut Supreme Court concluded that "as a general matter, we should not construe our state constitution to provide a basis for the recognition of a private damages action for injuries for which the legislature has provided a reasonably adequate remedy." <u>Id.</u> at 339.

---

[20]Article First, § 20 of the Connecticut Constitution, as amended, reads: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability." CONN. GEN. STAT. Const. Art. 1, § 20.

[21]Article First, § 8 addresses the rights of both the accused and the victim in criminal prosecutions, and defendants are correct that "[o]n its face, this section is inapplicable to this case." (Dkt. #26, at 7; <u>see also ATC P'ship v. Town of Windham</u>, 251 Conn. 597, 612-16 (1999)(no private cause of action for damages under Article First, § 8), <u>cert. denied</u>, 530 U.S. 1214 (2000)).

Article First, § 1 generally prohibits legislative acts that are intended solely for the benefit or advantage of an individual. <u>See Chotkowski v. State</u>, 240 Conn. 246, 257 (1997)(citation omitted). Plaintiffs have made no such claim in this case.

[22]Article Eighth, § 1 of the Connecticut Constitution reads: "There shall always be free public elementary and secondary schools in the state. The general assembly shall implement this principle by appropriate legislation." CONN. GEN. STAT. Const. Art. 1, § 20.

Five years later, in Binette v. Sabo, 244 Conn. 23 (1998), the Connecticut Supreme Court allowed a claim for violations of Article First, §§ 7 and 9 of the state constitution, but in doing so, "emphasized that [its] decision to recognize a Bivens-type remedy in this case does not mean that a constitutional cause of action exists for every violation of our state constitution." Id. at 47 (emphasis added). Additionally, the Binette court held that "[w]hether to recognize a cause of action for alleged violations of other state constitutional provisions in the future must be determined on a case-by-case basis" and must be "based on a multifactor analysis." Id. at 48.[23] These "multifactors" include:

> the nature of the constitutional provision at issue; the nature of the purported unconstitutional conduct; the nature of the harm; separation of powers considerations and the other factors articulated in Bivens and its progeny; the concerns expressed in Kelley Property Development, Inc.; and any other pertinent factors brought to light by future litigation.

Id. (footnote omitted). A key factor supporting the recognition of a constitutional cause of action in Binette was that the legislature had not "crafted a meaningful alternative remedy for the constitutional violation." Id. at 43. In this case, unlike in Bivens and Binette, plaintiffs have statutory remedies available to them under the IDEA.[24]

---

[23]In that vein, in this District, one District Judge similarly has held that there is "no private cause of action for monetary damages under the equal protection and due process provisions (Art. First, §§ 1, 8, and 20) of the Connecticut Constitution. Ward v. Housatonic Area Regional Transit Dist., 154 F. Supp. 2d 339, 356 (D. Conn. 2001), citing Kelley Property Dev., 226 Conn. at 319.

[24]Moreover, an award of damages against a municipality under Bivens defies the purpose of a Bivens action. See Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 485 (1994). A Bivens action is available against individual officers to satisfy, in part, the "purpose of Bivens" which is to "deter the officer . . . ." Id. (emphasis & citations omitted). As the U.S. Supreme Court has reasoned, "[i]f we were to imply a damages action directly against federal agencies, thereby permitting claimants to bypass qualified immunity, there would be no reason for aggrieved parties to bring damages actions against individual officers . . . [and] the deterrent effects of the Bivens remedy would be lost." Id.

Additionally, because the due process clause in the state and federal constitutions have essentially the same meaning, the reasons for granting defendants' Motion to Dismiss plaintiffs' 42 U.S.C. § 1983 claim apply to the dismissal of plaintiffs' claim under Article First, § 10.

In their Complaint, plaintiffs assert claims under Connecticut General Statutes §§ 10-4a, 10-15, 10-157, 10-184, 10-207, 10-220, 10-231e, and 10-291.  (Dkt. #1, ¶¶ 6, 9, 136, 140-41).  Defendants move for dismissal of plaintiffs' statutory claims on grounds that these statutes do not create a private cause of action. (Dkt. #26, Brief at 12-14).[26]

As indicated at the outset of this Ruling, see Section II.A. supra, plaintiffs' action is an administrative appeal of a due process hearing officer's decision, dated November 15, 2010, in which the hearing officer dismissed plaintiff's request for that hearing officer to declare, inter alia, that defendants improperly failed to identify M.A. as a child requiring special education and related services under Other Health Impairment for the school years of 2006-07, 2007-08, 2008-09, and 2009-10.  (Dkt. #1, ¶ 8 & Exh. A).  Again, plaintiffs have

---

Plaintiffs erroneously contend that Sheff v. O'Neill, 238 Conn. 1 (1996), Connecticut Coalition for Justice in Educ. Funding, Inc. v. Rell, 295 Conn. 240 (2010), and Forest Grove School Dist. v. T.A., 129 S. Ct. 2484 (2009), are "binding precedent" which have allowed "private causes of action seeking damages based on the failure to provide a free appropriate public education pursuant to the Connecticut Constitution, and ha[ve] found defendants to be in violation of their Constitutional affirmative obligation to provide a [FAPE] to students without discrimination against them." (Dkt. #27, at 13). In Sheff, 238 Conn. at 4, and in Connecticut Coalition, 295 Conn. at 250-51, the plaintiffs sought declaratory judgment and injunctive relief, not monetary damages.  In Forest Grove, 129 S. Ct. at 2498, the U.S. Supreme Court concluded that the IDEA authorizes reimbursement for the cost of private special education services when a district fails to provide a FAPE and the private school placement is appropriate.

[25]In light of the Court's conclusion in Section II.A. supra, the Court need not discuss defendants' arguments relating to defendant City of Torrington.  (Dkt. #26, Brief, at 9-12).

[26]Defendants appropriately observe in their reply brief that plaintiffs did not respond to this argument in their opposition brief, and thus such claims should dismissed as abandoned.  (Dkt. #29, at 6-7).  This Court may deem a claim abandoned when a party moves for dismissal of claims and the opposing party "failed to address these claims addressed in any manner in their opposition . . . ." Brodsky, 2009 WL 230708, at *9 (multiple citations omitted).  See note 18 supra.  However, for the purpose of completeness, this Magistrate Judge will addressed the substantive reasons for dismissal of plaintiffs' Connecticut statutory claims.

not brought a negligence action against defendants.[27] Federal jurisdiction over plaintiffs' claims arises from plaintiffs' administrative appeal of a due process hearing, pursuant to a federal claim asserted under the IDEA. As stated above, under the IDEA, 20 U.S.C. § 1415(i)(2)(A), jurisdiction lies in the district court over an appeal of the findings and decision made after an impartial due process hearing. The findings of the hearing officer, which are the subject of plaintiffs' IDEA claim, are that plaintiff M.A. did not qualify under the category of Other Health Impaired for special education eligibility, and absent such a finding, the proper analysis was whether the Board provided M.A. a FAPE or whether the parents' unilateral placement of M.A. was appropriate, so that reimbursement was not required. (Dkt. #1, Exh. A). Supplemental jurisdiction exists over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The district court possesses supplemental jurisdiction over state law claims "whenever the federal-law claims and state-law claims in the case derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them all in one judicial proceeding." Bergman v. Town of Hamden, No. 3:10 CV 1315(WWE), 2011 WL 337347, at *3 (D. Conn. Jan. 31, 2011), quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349-50 (1988)(internal quotations omitted). In this case, plaintiffs' claims relating to the conditions in the school system and the defendant City's failure to remediate the schools are not issues upon which the due process hearing decision is based. Rather, the hearing decision which is appealed in this case relates to plaintiff's failure to be identified as eligible

---

[27]See CONN. GEN. STAT. § 52-557n(a)(1)(a political subdivision of the state, which includes members of local boards or commissions, are liable for damages to person or property caused by negligent acts of those acting within the scope of their employment or official duties.).

18

for special education under the category of Other Health Impaired. In light of that conclusion, the hearing decision did not address whether plaintiff M.A. was provided a "[FAPE] or whether unilateral placement was appropriate, warranting reimbursement." (Dkt. #1, Exh. A, at 12).

Even if jurisdiction is proper in this case, the Court nonetheless will dismiss plaintiffs' state statutory claims pursuant to Rule 12(b)(6). The Connecticut Supreme Court has "previously stated" that municipal entities are "generally immune from liability for . . . tortious acts at common law . . . unless the legislature has enacted a statute abrogating that immunity." Williams v. New Haven, 243 Conn. 763, 766-67 (1998)(multiple citations & internal quotations omitted).[28] Section 10-4a of the Connecticut General Statutes identifies the educational interests of the state, and the enforcement thereof is specifically assigned to the State Board of Education, not to individuals. See CONN. GEN. STAT. §§ 10-4a, 10-4b.

Section 10-157 relates to the relationship of the superintendent of schools to the local or regional boards of education, and the authority of the superintendents to supervise schools, and this statutory section does not provide "an independent source of liability against a school board itself." Shields v. Plymouth Bd. of Educ., No. CV30523698S, 2005 WL 1154344, at *3 (Conn. Super. Ct. Apr. 18, 2005). Section 10-184 relates to the duties of

---

[28]Further, the application of the three factor test developed in Napoletano v. CIGNA Healthcare of Connecticut, Inc., 238 Conn. 216, 249 (1996), cert. denied, 520 U.S. 1103 (1997), overruled on other grounds, Batte-Holmgren v. Comm'r of Public Health, 281 Conn. 277 (2007), to determine whether a Connecticut statute creates an implied right of action, yields the same result. The Napoletano factors are:

First, is the plaintiff one of the class for whose ... benefit the statute was enacted ...? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? ... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

Id. (internal quotations & citations omitted).

parents, including their duty to "cause" their children to attend school; it does not impose a duty upon schools. Conn. Gen. Stat. § 10-184; Brodsky v. The Mead School for Human Dev., No. DNX05CV970156788S, 1999 WL 391580, at *15 (Conn. Super. Ct. Jun. 4, 1999).

Section 10-291 addresses the process for approval of building plans and site development and Section 10-15 references the number of days in the year in which school must be maintained and the number of actual school work hours that must be met, and provides for the cancellation and rescheduling of the school schedule due to inclement weather or otherwise. Conn. Gen. Stat. §§ 10-15, 10-291. Even if plaintiffs could pursue a private cause of action under either of these Sections, for which there is no indication that they could, plaintiffs have not alleged that defendant Board of Education did not satisfy the requisite number of schools days or school hours, and plaintiffs have not allege facts that would fall within the purview of § 10-291. Rather, the duty to properly maintain schools is a duty owed by the board of education under Conn. Gen. Stat. § 10-220, but § 10-220 "[does] not authorize a cause of action against a municipality." Caruso v. Town of Westport, No. CV65001963S, 2006 WL 3008107, at *2 (Conn. Super. Ct. Oct. 10, 2006). Section 10-207 details the duties of school medical advisors, and Section 10-231e provides that the boards of education ensure the maintenance and operation of the heating, ventilation and air conditioning system. Conn. Gen. Stat. §§ 10-207, 10-231e. None of these statutory provisions include an abrogation of immunity. While the state legislature has set forth general principles of municipal liability and immunity in Section 52-557n,[29] plaintiffs have not relied on this statute, nor have they cited any statute as a means of abrogating defendants' governmental immunity. As the U.S. District Judge Jon O. Newman held in Pandis v.

[29]See note 27 supra.

<u>Sikorsky Aircraft Division of United Techs. Corp</u>, 431 F. Supp. 793, 796 (D. Conn. 1977):

> While the state judiciary is free to read a private right of action prior to the appeal stage into the state act if it chooses, it would be inappropriate for a federal court to reach out and take jurisdiction over a cause of action that can only succeed by giving the state statute an interpretation far different from the plain meaning of the words the state legislature used.

## III. CONCLUSION

For the reasons stated above, defendants' Motion to Dismiss (Dkt. #26) is <u>granted</u>, and plaintiffs' Motion for Reconsideration (Dkt. #32) is <u>granted in part, to the extent that the Magistrate Judge has considered plaintiffs' arguments, but the earlier order of the Clerk of Court remains undisturbed</u>.

<u>See</u> 28 U.S.C. § 636(b)**(written objections to ruling must be filed within fourteen days after service of same)**; Fed. R. Civ. P. 6(a), 6(e) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; <u>Small v. Secretary, H&HS</u>, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

Dated this 20th day of April, 2011, at New Haven, Connecticut.

 /s/ Joan G. Margolis, USMJ
Joan Glazer Margolis
United States Magistrate Judge