IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
----------------------------------------------------x
                                        :
M.A. ET AL.                             :          3:10 CV 1890 (JGM)
                                        :
v.                                      :
                                        :
TORRINGTON BOARD OF EDUCATION           :
                                        :          DATE: APRIL 3, 2014
----------------------------------------------------x
```

RULING ON PLAINTIFFS' MOTION FOR EQUITABLE RELIEF
AND ON PLAINTIFFS' MOTION FOR ATTORNEY'S FEES

Familiarity with the Court's previous ruling is presumed, but in light of the content of

the pending motions, the relevant procedural background is recited.  (See Dkt. #49, 2012

WL 3985166 (D. Conn. Sept. 10, 2012); Dkt. #65, 2013 WL 4834440 (D. Conn. Sept. 10,

2013)).  On December 1, 2010, plaintiff J.A., the parent of then-minor M.A. ["Parent" and

"M.A.," respectively, and collectively "plaintiffs"],[1] commenced this action against defendants

City of Torrington and the Torrington Board of Education ["defendant Board" and collectively

"defendants"], pursuant to Article First, §§ 8 and 20, as amended, and Article Eighth, § 1,

as amended, of the Connecticut Constitution; Connecticut General Statutes §§ 10-220, 10-

231e, 10-291, 10- 207, 10-4a, 10-15, 10-157, 10-184, 10-76a, 10-76d, and 10-76h et seq.,

and Connecticut Agencies Regulations § 10-76a-2; the Individuals with Disabilities Education

Act ["IDEA"], 20 U.S.C. § 1415 and the Individuals with Disabilities Improvement Act of 2004

["IDEIA"], 20 U.S.C. § 1400 et seq.; and the due process clauses and equal protection

clauses of the Fifth and Fourteenth Amendments to the United States Constitution.  (Dkt.

#1).  This action was an administrative appeal of a due process hearing officer's decision,

dated November 15, 2010, in Student v. Torrington Board of Education, Case No. 09-0552,

---

[1]M.A. was a minor during all of the relevant years at issue.  (See Complaint, ¶ 2).

which dismissed with prejudice plaintiffs' request for the hearing officer to declare, <u>inter alia</u>, that defendants improperly failed to identify M.A. as a child requiring special education and related services under Other Health Impairment ["OHI"] for the school years of 2006-2007, 2007-2008, 2008-2009, and 2009-2010.  (Complaint, ¶ 8).[2]

On March 8, 2011, U.S. District Judge Janet Bond Arterton referred this case to this Magistrate Judge. (Dkt. #24).  Eight days later, defendants filed a partial Motion to Dismiss. (Dkt. #26).[3]  Less than one month later, on April 20, 2011, this Magistrate Judge issued a Recommended Ruling, in which defendants' Motion to Dismiss was granted, thereby dismissing defendant City of Torrington, and dismissing Counts Five and Six[4] (Dkt. #35); plaintiffs objected to the Recommended Ruling (Dkt. #36; <u>see also</u> Dkt. #37).   On September 10, 2012, Judge Arterton issued her Ruling on Plaintiffs' Objection to Recommended Ruling (Dkt. #49), 2012 WL 3985166, in which she adopted the Recommended Ruling granting defendants' Motion to Dismiss, with the modification that the Court declined to exercise supplemental jurisdiction over plaintiffs' state constitutional claims, thereby leaving the case to proceed only as an administrative appeal challenging the determinations of the hearing officer and the defendant Board under the IDEA.  2012 WL

_____

[2]The complaint rested upon six counts: denial of an opportunity for the parents to have individualized education program ["IEP"] meetings and a determination as to the eligibility of M.A. for special education (Count One); denial of an evaluation of the child as eligible for special education (Count Two); denial of an opportunity for the parents to have a due process hearing (Count Three); hearing officer's error in finding that M.A. was not eligible for special education under OHI (Count Four); hearing officer's error in allowing defendants to conduct an IEP meeting and evaluation of the child in 2010 during the due process hearing and basing her decision regarding all claims on that IEP and evaluation (Count Five); and defendants' and the hearing officer's violation of M.A.'s rights pursuant to the Connecticut Constitution (Count Six).

[3]Familiarity with the corresponding procedural history relating to plaintiffs' Motion for Default Entry 55(a) (Dkt. #28) is presumed.  (<u>See</u> Dkts. ##30, 32, 49; 2013 WL 4834440, at *1, n.4).

[4]<u>See</u> note 2 <u>supra</u>.

3985166, at *2-4.

On November 14, 2012, the parties consented to the jurisdiction of this Magistrate Judge and the case was transferred accordingly.  (Dkt. #52).  On December 10, 2012, plaintiffs filed their Motion for Summary Judgment (see Dkts. ##55-57, 62, 64), and defendant Board filed its Motion for Judgment on the Administrative Record (Dkts. ##58, 63).[5]

On September 10, 2013, a Ruling on Cross Motions for Summary Judgment was filed, in which summary judgment was granted in plaintiffs' favor and denied against defendant as to Counts One, Two and Three, but denied against plaintiffs and granted in defendant's favor as to Count Four. (Dkt. #65, 2013 WL 4834440 ["September 2013 Ruling"]).

I. SEPTEMBER 2013 RULING

In the September 2013 Ruling, this Court granted plaintiffs' Motion for Summary Judgment in favor of plaintiffs on grounds that defendant failed to abide by its "continuing responsibility to develop an IEP even after M.A. had been parentally placed at Chase Collegiate[,]" 2013 WL 4834440, at *17 (citation, internal quotations & alterations omitted), and by "failing to convene a PPT for the requisite years at issue, defendant denied the Parent the opportunity to participate in the development of her son's IEP, and violated plaintiff's right to a FAPE [free and appropriate education]." Id. at *18 (citation, internal quotations & alterations omitted).  However, this Court also concluded that M.A. did not require special education services during the school years at issue.  Id. at *21, 25.  The parties were directed to submit additional motions and briefs on the issue of "whether in the unusual circumstances of this case, plaintiffs are entitled any additional 'relief as the court determines

_____

[5]On December 11, 2012, defendant filed its Answer, officially filing the Administrative Record.  (Dkt. #59).

3

appropriate [ ]' pursuant to 20 U.S.C. § 1415(i)(2), and/or attorney's fees pursuant to 20 U.S.C. § 1415(i)(3)." Id. at *25 (citations omitted).

## II. PENDING MOTIONS

On December 29, 2013, plaintiffs filed the pending Motion for Equitable Relief, with brief in support (Dkts. ##70-71), along with their Motion for Attorney's Fees, with brief and exhibits in supports.  (Dkts. ##72-73).[6]  On March 4, 2014, defendant filed its brief in opposition to plaintiffs' Motion for Attorney's Fees (Dkt. #79),[7] and seven days later, defendant filed its brief in opposition to plaintiffs' Motion for Equitable Relief.  (Dkt. #83).[8] On March 10, 2014, plaintiffs filed their reply in response to defendant's opposition to plaintiffs' attorney's fees motion  (Dkt. #82), and one week later, plaintiffs filed their reply in response to defendant's opposition to plaintiffs' Motion for Equitable Relief.  (Dkt. #84).

For the reasons set forth below, plaintiffs' Motion for Equitable Relief (Dkt. #70) is granted in limited part and denied in large part, and plaintiffs' Motion for Attorney's Fees (Dkt. #72) is granted in limited part in the amount of $55,950 in attorney's fees and $700 in costs.

_____

[6]Attached to plaintiffs' brief in support is plaintiffs' counsel's Billing Statement from April 5, 2007 to December 29, 2013 ["Billing Stmt"](Exh. A); affidavit of plaintiffs' counsel, sworn to December 27, 2013 ["Stevenson Aff't"](Exh. B); affidavit of Attorney Anne Louise Blanchard, sworn to December 17, 2013 ["Blanchard Aff't"](Exh. C); and declaration of Winona W. Zimberlin, signed December 28, 2013 ["Zimberlin Decl."](Exh. D).

[7]Attached to defendant's brief in opposition is a copy of excerpts from the administrative hearing transcript from October 27, 2009 in Student v. Torrington Board of Education, #07-467 ["10/27/09 Hearing Tr."].

[8]Attached to defendant's brief in opposition is a copy of excerpts of the transcript from the telephone conference held on June 23, 2009, before the late U.S. District Judge Mark R. Kravitz in M.A. v. Torrington Bd. of Educ., No. 08 CV 857 (MRK)["6/23/09 Tr."].

A. MOTION FOR EQUITABLE RELIEF

In their Motion for Equitable Relief, plaintiffs seek equitable relief in the form of (1) tuition reimbursement for the 2006-2007, 2007-2008, 2008-2009 and 2009-2010 schools years; (2) a reasonable direct payment award; (3) attorney's fees and costs as set forth in plaintiffs' Motion for Attorney's Fees; and (4) any additional relief this court deems appropriate.  (Dkt. #70, at 1-2).  In response, defendant contends that plaintiffs are not entitled to tuition reimbursement; plaintiffs are not entitled to monetary damages; and plaintiffs are not entitled to attorney's fees as they are not a prevailing party. (Dkt. #83, at 6-13).

1. TUITION REIMBURSEMENT

Pursuant to the IDEA, the district court has the authority, based on the "preponderance of evidence," to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii).  In Sch. Comm. of Town of Burlington, Mass v. Dept. of Educ. of the Commonwealth of Mass., 471 U.S. 359, 369 (1985)["Burlington"], the U.S. Supreme Court held that tuition reimbursement is included in the appropriate relief afforded under the statute.   See also Florence Cnty. Sch. Dist. Four v. Carter, 510 U.S. 7, 15-16 (1993)["Carter"](reimbursement may be available even when parents unilaterally change the child's placement without the consent of state or local officials). The issue of whether the parents of a disabled child are entitled to reimbursement for the cost of a private school turns on two questions: "first, whether the challenged IEP was adequate to provide a child with a [FAPE]; and second, whether the private educational services obtained by the parents were appropriate to the child's needs." M.C. v. Voluntown Bd. of Educ., 226 F.3d 60, 66 (2d Cir. 2000), citing Burlington, 471 U.S. at 370 (additional citations omitted).   A party may

seek reimbursement under the IDEA for out-of-pocket expenses that the school district "should have paid all along and would have borne in the first instance had it developed a proper IEP." Burlington, 471 U.S. at 371.  The Burlington decision "made clear that the IDEA authorize[s] such a monetary award precisely because it [does] not constitute damages." Chambers ex rel Chambers v. Sch. Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 184 (3d Cir. 2009), citing Burlington, 471 U.S. at 370-71.

In both Burlington and Carter, the Supreme Court considered claims for reimbursement where the school district failed to provide an adequate IEP.  However, in Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 238 (2009), the U.S. Supreme Court revisited this question but with a different twist, in that the adequacy of the proposed IEP was not at issue, as it was in Burlington and Carter, but rather, at issue was "the [s]chool [d]istrict's failure to provide an IEP at all."  Id. at 238.  Additionally, the children in Burlington and Carter had previously received special education services, whereas the child in Forest Grove had not received such services from the school district.  Id.  While the Supreme Court held in Forest Grove that tuition reimbursement was appropriate "regardless of whether the child previously received special education or related services through the public school[,]" id. at 247, that decision rested on the hearing officer's decision that the child was eligible for special education services.  Id. at 235 (hearing officer issued decision finding the school district failed to meet its obligations under the IDEA in not identifying the child as eligible for special education services); see also id. at 238-39 ("when a child requires special-education services, a school district's failure to propose an IEP of any kind is at least as serious a violation of its responsibilities under IDEA as a failure to provide an adequate IEP.").

This case, just as Forest Grove, 557 U.S. at 238, involves a child who had not

received special education services.  However, in this case, as the September 2013 Ruling held, M.A. was not, in fact, even eligible for such services. 2013 WL 4834440, at *21 ("Following the guidance of the Second Circuit and courts therein, this Court . . . concludes that M.A. was not eligible for special education services." )(citation omitted).  Thus, an order of reimbursement would not serve the purpose articulated in <u>Burlington</u> and in <u>Forest Grove</u>, of "'belatedly pay[ing] expenses that [the school district] should have paid all along[,]'" <u>Forest Grove</u>, 557 U.S. at 246, <u>quoting Burlington</u>, 471 U.S. at 370-71, as the school district would not have paid for services for a child who is not eligible.

Additionally, plaintiffs' request for tuition reimbursement is denied based on the plain language of the September 2013 Ruling.  In the September 2013 Ruling, this Court expressly rejected plaintiffs' request for tuition reimbursement at Chase Collegiate in light of the Court's earlier conclusion that  "M.A. did not require special education services during his high school years[.]" 2013 WL 4834440, at *25.  Moreover, this Court concluded that there was "insufficient evidence to establish that . . . Torrington High School" was not an appropriate placement for M.A.  <u>Id.</u>  Specifically, as pointed out in the September 2013 Ruling, Dr. John Santilli[9] testified that M.A.'s allergic reactions were caused by mold exposure that was related to M.A.'s exposure at the middle school, not to his exposure at the high school at issue in this case; as of the time M.A. entered his high school years, his "condition was controlled and he had no restrictions on his activities," and he had only seen Dr. Santilli two or three times before September of his senior year; Dr. Santilli's advice for M.A. to attend another school was made "at least three years before M.A. started high school, was made without M.A. having ever stepped inside the high school building, and was made without M.A. ever

---

[9]Dr. John Santilli was plaintiff's allergist starting in mid-2003.  September 2013 Ruling, 2013 WL 4834440, at *2.

complaining of or experiencing any symptoms from exposure to the high school building[]";

Dr. Santili had no first hand knowledge about the conditions in the high school; and the high

school "has had no systemic problems related to mold and no complaints as to the air

quality[.]"  2013 WL 4834440, at *22, 24 (citations omitted).  This Court also concluded that

"there is insufficient evidence to establish that the Torrington High School had more irritants,

dust particles, or mold spores than Chase Collegiate, or that conditions at Torrington High

School could exacerbate M.A.'s allergies." Id. at *25 (citation omitted).

Plaintiffs contend that "[w]hile this [C]ourt concluded that there was 'insufficient

evidence to prove that M.A. was entitled to special education services[,]' it fairly can be

implied from the evidence adduced, nonetheless, that the private school placement was

appropriate . . . ." (Dkt. #71, at 7). Contrary to plaintiffs' contention that "it was clear from

the evidence in the record that placement of the child at the private school was

appropriate[]" (Dkt. #84, at 3), the September 2013 Ruling concluded otherwise, and in fact,

held that plaintiffs could not establish that Torrington High School was not an appropriate

placement, and after noting the history of water intrusion at Chase Collegiate without

subsequent mold or air quality testing, concluded that there is "no evidence that Chase

Collegiate ha[d] a measurably different environment than Torrington High School."  2013 WL

4834440, at *25 (citations omitted).  Thus, plaintiffs cannot satisfy the second prong for this

Court's consideration, namely that "the private educational services obtained by the parents

were appropriate to the child's needs." See M.C., 226 F.3d at 66 (citations omitted).[10]

---

[10]Additionally, although plaintiffs seek equitable relief under the IDEA's stay-put provision, 20 U.S.C. § 1415(j) (Dkt. #71, at 11-18; Dkt. #84, at 5-9), such relief is not available pursuant to the holding of the September 2013 Ruling, 2013 WL 4834440, at *25, n.46 ("Additionally, in light of the foregoing conclusions, the Court need not address plaintiffs' stay-put claims."), and the Court declines to revisit this issue.

Plaintiffs also contend that equities warrant tuition reimbursement or a direct payment award in full or in part for the four year denial of a PPT meeting, and the improper denial of a due process hearing for nearly two years.  (Dkt. #71, at 5-8; Dkt. #84, at 4-5).  Defendant counters that "there must be a finding both that M.A. was eligible for special education and related services <u>and</u> that Torrington High School was not an appropriate placement[,]" and only then would equities "be considered to determine whether a reduction of a reimbursement award is warranted."  (Dkt. #83, at 8)(emphasis in original).

Plaintiffs appropriately observe that parents have an "independent, enforceable right" to equitable relief under the IDEA.  (Dkt. #84, at 10, <u>quoting Winkleman v. Parma City Sch. Dist.</u>, 550 U.S. 516, 533 (2007)).  In <u>Winkleman</u>, the U.S. Supreme Court held that these "independent, enforceable rights . . . are not limited to certain procedural and reimbursement-related matters, [but] encompass the entitlement to a free appropriate public education for the parents' child." 550 U.S. at 533.  These rights are derived from the statutory construction of the IDEA which provides for "at least two means of cost recovery that inform[ed]" the Supreme Court's analysis. <u>Id.</u> at 526.

> First, in certain circumstances it allows a court or hearing officer to require a state agency "to reimburse the parents [of a child with a disability] for the cost of [private-school] enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child." [20 U.S.C.] § 1412(a)(10)(C)(ii).  Second, it sets forth rules governing when and to what extent a court may award attorney's fees.  [See 20 U.S.C.] § 1415(i)(3)(B).  Included in this section is a provision allowing an award "to a prevailing party who is the parent of a child with a disability." [20 U.S.C.] § 1415(i)(3)(B)(i)(I).

<u>Id.</u>  The Court explained that these rights are accounted for in the provisions of the IDEA, and the "basic measure of monetary recovery . . . is not expanded by recognizing that" parents are granted some of these rights.  <u>Id.</u> at 534. Thus, <u>Winkleman</u> explains that parents

9

may assert their right to recover for the denial of a FAPE through tuition reimbursement, and/or may seek an award of attorney's fees.  Id.  "Parents are entitled to reimbursement only if a federal court concludes both that the public placement violated IDEA and the private school placement was proper under the Act.  And even then courts retain discretion to reduce the amount of a reimbursement award if the equities so warrant . . . ."  Forest Grove, 557 U.S. at 246-47 (citation & internal quotations omitted)(emphasis in original).

In this case, both as discussed above and as the September 2013 Ruling held, plaintiffs cannot succeed on their claim for tuition reimbursement as there was no finding that M.A. was eligible for special education, and thus there was no finding that placing M.A. at Torrington High School would have violated the IDEA, and there was no finding that M.A.'s placement at Chase Collegiate was proper under the Act.  Therefore, consideration of plaintiffs' equities argument in light of the foregoing limits plaintiffs' claim to attorney's fees, as addressed in Section II.B infra.

### 2. MONETARY DAMAGES

In their brief in support of their Motion for Equitable Relief, plaintiffs request a reasonable direct payment award.  (Dkt. #70, at 1; Dkt. #71, at 18).  While the IDEA is silent on the availability of money damages under 20 U.S.C. 1415(i)(2)(C)(iii), the Second Circuit has held that "monetary damages are not available under the IDEA[.]"  Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 483, 486 (2d Cir. 2002).  As the Second Circuit explained:

> The purpose of the IDEA is to provide educational services, not compensation for personal injury, and a damages remedy-–as contrasted with reimbursement of expenses-–is fundamentally inconsistent with this goal. The availability of damages also would undercut the IDEA's carefully structured procedure for administrative remedies, a mechanism that encourages parents to seek relief at the time that a deficiency occurs and that

allows the educational system to bring its expertise to bear in correcting its own mistakes.

Id. at 486; see also Chambers, 587 F.3d at 184-85 ("[E]very circuit that has addressed [the issue of monetary damages] has held that compensatory and punitive damages are not available under IDEA.")(multiple citations collecting cases omitted). In light of this guiding precedent, plaintiffs' request for a reasonable direct payment award is denied.

B. MOTION FOR ATTORNEY'S FEES

The IDEA provides that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs – (I) to the prevailing party who is the parent of a child with a disability[.]"   20 U.S.C. § 1415(i)(3)(B)(i)(I).  "The IDEA's legislative history demonstrates that Congress intended the term 'prevailing party' to be construed consistently under the IDEA and other fee-shifting statues[,]" and it is "clear that Congress intended 'prevailing party' under the IDEA to have the same meaning as 'prevailing party' under § 1988."  J.C. v. Reg'l Sch. Dist. 10, Bd. of Educ., 278 F.3d 119, 123-24 (2d Cir. 2002).

As recited in the September 2013 Ruling, this case has had a long administrative and litigation history.  The first matter, Student v. Torrington Board of Education #07-467, began on April 2, 2008 when plaintiff filed a request for a hearing, in response to which defendant filed a Motion to Dismiss, which was granted on or about May 27, 2008 on grounds that the hearing officer lacked jurisdiction because M.A. was "'parentally-placed' not 'unilaterally placed,'" as M.A. "has not been identified, nor has [he] received any special education services."  September 2013 Ruling, 2013 WL 4834440, at *7 (citations omitted).[11] On June

---

[11]As discussed in Section II.B.1 infra, plaintiffs then alleged in Count Three of their Complaint in this action that defendants' filing of the motion to dismiss in May 2008 prevented plaintiffs from exercising due process rights to exhaust their administrative remedies and to obtain

5, 2008, plaintiffs filed their Complaint in this Court, which case was before the late U.S. District Judge Mark R. Kravitz. Id. at *8; see M.A. v. Torrington, 3:08 CV 857(MRK)["2008 case"]. On June 23, 2009, in light of the U.S. Supreme Court's decision in Forest Grove, 557 U.S. 230, Judge Kravitz remanded the case back to the hearing officer "to reconsider her determination and decide all other issues as necessary." September 2013 Ruling, 2013 WL 4834440, at *8 (citations omitted). During a telephonic conference with Judge Kravitz on June 23, 2009, Judge Kravitz informed counsel that:

> it makes the most sense to deal with fees at the end of the case after you know what the final result is and see what's at stake. . . [Thus, he ordered that the case be remanded] without prejudice to your right to seek fees [and any other equitable relief] in connection with the proceedings before me prior to remand, once there is a final decision from the hearing officer after remand.

(6/23/09 Tr. at 8-9).[12]

Upon remand from Judge Kravitz, plaintiffs filed a Motion to Amend the issues before the Hearing Officer to include the 2008-2009 and 2009-2010 school years. September 2013 Ruling, 2013 WL 4834440, at *8 (citations omitted). On August 31, 2009, the Hearing Officer concluded that the previous dismissal of #07-467 was "inconsistent with the reasoning in Forest Grove," and "ruled that the matter would proceed as a FAPE issue concerning whether [M.A.] should have been identified." Id. The hearing convened for thirteen sessions -- on September 10, October 8 and 27, December 11, 14 and 16, 2009, June 2, 17, 18, 22, 23 and 29, and July 14, 2010, and the following issues were before the

---

an administrative due process hearing. (Complaint ¶¶ 65-68, 83-88). See note 2 supra.

[12]Judge Kravitz clairvoyantly observed that "it is clear to me that you might conceivably have a request for fees and costs pre-remand but I don't know how you would - - at the end of the case. . . . It's not clear to me that you would have a right to equitable relief beyond fees and costs pre-remand at the end of the case." (Id. at 9).

Hearing Officer: whether the Board failed to identify M.A. as OHI qualifying him for special education services for the four school years from 2006-2010, and if so, whether the Board failed to provide M.A. with a FAPE for the those school years, and if so, whether the parent is entitled to reimbursement for unilateral placement of M.A. at Chase Collegiate School for the 2006-2010 school years.  Id. at *10 (citations omitted). On October 27, 2009, the third hearing date after the hearing resumed in the remanded case, #09-0552, the parties were ordered to convene a PPT meeting, which began on December 3, 2009.  Id. at *8 (citations omitted).  On November 15, 2010, the Hearing Officer issued her decision in which she concluded that "absent a finding that [M.A.] should be identified as eligible for special education services, an analysis as to whether the Board provided [M.A.] a [FAPE] or whether unilateral placement was appropriate, warranting reimbursement is not required." Id. at *10 (citations omitted).  The Hearing Officer dismissed the case with prejudice, and plaintiffs commenced  this action on December 1, 2010 against the Board and the City of Torrington. Id.[13]

Thereafter, the parties filed Cross Motions for Summary Judgment,[14] and as discussed

_____

[13]See note 2 supra.

[14]Plaintiffs sought summary judgment on grounds that defendant failed to hold the IDEA and Section 504 meetings to determine M.A.'s eligibility as to OHI for the all four high school years, as alleged in Count One; similarly, defendant failed to conduct an evaluation to determine M.A.'s eligibility as OHI for those four school years, as alleged in Count Two; defendant intentionally and wrongfully denied plaintiffs an opportunity for a due process hearing, as alleged in Count Three; and the Hearing Officer wrongfully concluded that the child was not eligible as OHI when the child has "multiple disabilities" that constitute an "adverse affect on his educational performance," when he was "entitled to instruction in a "safe school setting[,]" when the "'stay put' provision of the IDEA required his continued placement" at Chase Collegiate, and when the Hearing Officer's decision was not reasoned or supported by the evidence, as alleged in Count Four.  (2013 WL 4834440, at *10 (citations omitted); see Dkts. ##55, 57).

Plaintiffs also argued that defendant's procedural violations, alone, are sufficient to warrant judgment in plaintiffs' favor; the Hearing Officer acted arbitrarily and in abuse of her discretion when she failed to make findings or conclusions of law on all of the issues raised by plaintiffs; and

above, this Court ruled in plaintiffs' favor on Counts One, Two and Three, and in favor of defendant on Count Four.  Id. at *2-25.  Specifically, the September 2013 Ruling held that defendant "violated its procedural obligation to convene a PPT and develop an IEP for the school years 2006 through 2010," but that there was "insufficient evidence to prove that M.A. was entitled to special education services and that he was precluded from attending Torrington High School."  2013 WL 4834440, at *25.  As observed in the Ruling, "plaintiffs primarily [sought] reimbursement for the educational expenses associated with Chase Collegiate, . . . specifically just compensation for [defendant's] continuing violations from [2006-2010], including, but not limited to tuition reimbursement, transportation, books and other expenses related to the cost of education at . . . Chase Collegiate . . . [,]" but such relief is not appropriate in light of the holding of the September 2013 Ruling, namely, that "M.A. did not require special education services during his high school years[.]" Id. (citations & internal quotations omitted)("In light of the conclusion . . . that M.A. did not require special education services during his high school years, the Court need not address the Parent's claim for tuition reimbursement."); see Section II.A.1. supra.  Thus, the first question that must be addressed is whether plaintiffs were "prevailing parties" in the proceedings before this Court in order to permit consideration of their attorney's fees motion.

---

the Hearing Officer acted in direct contravention to the purposes and goals of the IDEA in concluding that M.A. did not qualify as OHI.  (See id.).

Defendant sought summary judgment on the administrative record on grounds that the Board properly determined that M.A. did not have a disability under the IDEA; plaintiffs' claims of procedural violations are waived and the record does not establish such violations, and plaintiffs were not prejudiced by any inadequacies; and, even assuming arguendo that M.A. was eligible for special education services under the IDEA, tuition reimbursement is not warranted in this case. (2013 WL 4834440, at *11; see Dkt. #58; see also Dkt. #38).

## 1. PREVAILING PARTY

Plaintiffs are prevailing parties "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)(citation omitted). To be a prevailing party, one must either secure a judgment on the merits or be a party to a settlement agreement enforced through a consent decree, both of which "create [a] material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Hum. Res., 532 U.S. 598, 604 (2001)(citations & internal quotations omitted).  Plaintiffs "may be considered . . . prevailing [parties] even though the relief ultimately obtained is not identical to the relief demanded in the complaint, provided the relief obtained is the same general type." Koster v. Perales, 903 F.2d 131, 134-35 (2d Cir. 1990)(citation omitted).  However, a "purely technical or de minimis" victory is not enough to qualify a party as prevailing. Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792 (1989).

In Buckhannon, the U.S. Supreme Court specifically rejected the "catalyst theory," which allowed for "prevailing party" status if a lawsuit achieves a "voluntary change in conduct," because "[i]t allows an award where there is no judicially sanctioned change in the legal relationship between the parties."  532 U.S. at 605.  Thus, after Buckhannon, "at a minimum," plaintiffs "must be able to  point to a resolution of the dispute which changes the legal relationship between [them] and the defendant[,]" Texas State Teachers Ass'n, 489 U.S. at 792 (citations omitted), bearing in mind that "the degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all." Id. at 790 (emphasis in original).

Plaintiffs contend that they are prevailing parties "[b]ecause this [C]ourt found the defendant[ ] in violation of IDEA's procedural requirements, denying . . . plaintiffs a FAPE, and because . . . plaintiffs[] succeeded on significant issues in the litigation[.]" (Dkt. #73, at 7; see id. at 6-8).   Specifically, plaintiffs assert that an award of attorney's fees is proper for the time spent on the administrative case #07-467 and the 2008 case before Judge Kravitz; an award is proper for time spent on the PPT meeting ordered by the due process hearing officer, and is proper for the due process hearing on remand following the Judge Kravitz case; and plaintiffs' counsel should be compensated in full for her time spent on this case.  (Id. at 8-18).

Defendant counters that "while the Court found that the procedural violations constituted a denial of FAPE, [plaintiffs] did not achieve any of [their] requested relief[,] i.e., reimbursement of tuition and expenses for Chase Collegiate for four years."  (Dkt. #79, at 8-9).  Defendant also contends the legal relationship did not change because the hearing officer "ordered" defendant to hold a PPT meeting; rather, the hearing officer ordered the PPT in light of the Parent's opposition to defendant's request for a PPT.   (Id. at 9).  Additionally, defendant asserts that the decisions by Judge Kravitz "did not address the merits of [plaintiffs'] claims, nor did they achieve a change in the legal relationship between the parties."  (Id.).

The two cases upon which defendant relies in opposition to plaintiffs' Motion are inapposite to the unusual facts in this case.  See P.O. ex rel L.T. v. Greenwich Bd. of Educ., 210 F. Supp. 2d 76 (D. Conn. 2002) & Mr. & Mrs. G. v. Trumbull, Conn. Bd. of Educ., No. 3:04 CV 1653 (MRK), 2005 WL 544711 (D. Conn. Feb. 24, 2005).  In P.O., unlike in this case, the child was identified as requiring special education prior to the dispute; PPT meetings

16

were held to discuss the appropriateness of the child's IEP; and the parents requested and received a due process hearing.  210 F. Supp. 2d at 78-80.  In that case, the parents were not "prevailing parties" when although the hearing officer found that the Board failed to provide a FAPE for one of the school years, the hearing officer found in favor of the Board on all of the other issues, and particularly, found in favor of the Board on the "ultimate issue[,]" that the child was provided a FAPE for the 1998-1999 school year which was precisely why the parents brought the action.  Id. at 83.

In Mr. & Mrs. G, plaintiffs sought prevailing party status after obtaining a stay put order from the hearing officer and a temporary restraining order from the district court, the purpose of both of which was to ensure that the legal relationship of the parties did not change. 2005 WL 544811, at *2-4.  Relying on the Supreme Court's decision in Buckhannon, Judge Kravitz held that a "10-day TRO is simply 'not the stuff of which legal victories are made[,]'" 2005 WL 54481, at *4, quoting Buckhannon, 532 U.S. at 605 (internal quotation and citation omitted), and the hearing officer's stay put decision "was not a decision on the merits of the parties' claims that altered their relationship[.]" Id.  Judge Kravitz noted that "[n]either of the [h]earing [o]fficer's rulings placed any additional requirements or responsibilities upon the defendants with regard to [the child,] . . . [a]nd . . . the [h]earing [o]fficer in her Final Decision rejected [p]laintiffs' claims against [the Town defendants] on the merits."  Id.

In this case, while plaintiffs did not ultimately prevail on their goal of receiving tuition reimbursement for M.A.'s high school years at Chase Collegiate because they failed to establish that he was eligible for special education, plaintiffs were denied the process to reach that determination through the Board's denial of the Parent's request for an IEP

meeting to determine M.A.'s eligibility for special education under the category of OHI, through the Board's failure to conduct any evaluations of M.A. to determine his eligibility for special education, and through the Hearing Officer's decision to grant the Board's motion to dismiss the Parent's request for a due process hearing which was based on legal error.  As discussed in the September 2013 Ruling, when plaintiffs requested a due process hearing, the Hearing Officer dismissed the case and agreed with the Board that the matter presented a child find issue.  2013 WL 4834440, at *13.  Thereafter, when the case was appealed to this Court (the 2008 case), Judge Kravitz informed counsel in January 2009 that the "precise question raised in Forest Grove, appears to be the question raised by your case, which is does that statute require a parent to have placed the child in public school before it can seek reimbursement for private school tuition[,] and if the Supreme Court had not granted certiorari in Forest Grove, this case would be . . . remanded on the basis of Frank G. as it is contrary to the law in the Second Circuit."  Id. at *14 (citations, internal quotations & alterations omitted).  In June 2009, Judge Kravitz held a second telephone conference in which he observed that the hearing officer's dismissal of the underlying case on grounds that "this student had never previously received special education and related services from the [C]ity of Torrington" is erroneous as "after Forest Grove, that is not the law.  . . . And it actually wasn't the law at the time of the decision by the hearing officer under Frank G." Id. (citations & footnote omitted).[15]

_____

[15]As also noted in the September 2013 Ruling, the Hearing Officer failed to accept responsibility for failing to follow governing Second Circuit precedent at that time:

> Immediately after the case was remanded to the Hearing Officer, the Hearing Officer noted on the record that this is the first time in her fourteen years in that role that she had a decision remanded or overruled.  (09-0552 9/10/09 Hearing Tr. at 8).  According to Hearing Officer, while "[t]here is also guidance within the Second Circuit[,]" her initial decision was issued in a "timeframe in

In its opposition to plaintiffs' Motion for Equitable Relief, defendant contends that plaintiffs are not entitled to attorney's fees because "defendant was well within its rights to file a motion to dismiss as to the original due process complaint[;]" defendant has the "right to rely on the hearing officer's decision granting that motion[;]" and defendant "may reasonably rely on an administrative or judicial decision until such time as that decision is modified." (Dkt. #83, at 12; see also id. at 9). In the September 2013 Ruling, this Court agreed with the foregoing contention, holding that a motion to dismiss before the hearing officer is a motion to contest the jurisdiction of the hearing officer, 2013 WL 4834440, at *13, but then this Court clearly stated that "the substance of the motion and the Hearing Officer's decision to grant said motion were based on legal error, and as explained to counsel by Judge Kravitz, were contrary to governing Second Circuit law, the result of which was that plaintiffs were improperly denied a due process hearing for nearly two years." Id. The September 2013 Ruling also held that

> [t]he first school year challenged at this procedural posture is the 2006-2007 school year. Therefore, at all times relevant to this case, the holding of Frank G., and later, for the 2009-2010 school year, the holding of Forest Grove, govern this case. The Board disregarded, or was inexplicably unaware of, this controlling precedent in the 2006-2007, 2007-2008, 2008-2009 school years, [and] was informed of the applicability of Frank G. in January 2009 by Judge Kravitz[.] . . . [T]he Board's actions were contrary to governing Second Circuit precedent.

---

which child find has been at issue, and the whole realm of FAPE and unilateral placement and reimbursement for a student who has not been enrolled or identified has been an issue, and it's been found different ways[]" thereby leading "ultimately even the court, the district court," to say "we had to wait to see what the Supreme Court decided[.]"

Id. at *14, n.23. However, as also noted in the September 2013 Ruling, the Hearing Officer ignored the fact that "while Judge Kravitz most appropriately deferred to a decision by the U.S. Supreme Court on this issue, he made it very clear that even prior to the Forest Grove decision, Frank G. was the governing law in this Circuit, on the basis of which the case still would have been remanded." Id.

Id. at *17.[16]

Thus, contrary to defendant's position, this is not a matter of "[h]indsight [being] 20-20." (Dkt. #83, at 9).  Frank G. was the governing law at the time of the decision by the Hearing Officer, and that law was not followed.  The remand order by Judge Kravitz was consistent with both Forest Grove and with Frank G.  Defendant, however, inexplicably claims that "[i]n January 2009, the only ruling that had actually entered in these proceedings was in the district's favor." (Dkt. #83, at 9).[17]   To the contrary, Judge Kravitz discussed with counsel the timing for plaintiffs to file a motion for fees in light of the remand, and even stated, that "it is clear to me that you might conceivably have a request for fees and costs pre-remand . . . ." (6/23/09 Tr. at 7-8).[18] This Court agrees. The remand "create[d] [a] material alteration of the legal relationship of the parties[.]" Buckhannon, 532 U.S. at 604 (citation and internal quotations omitted). Prior to that remand order, as stated in the September 2013 Ruling, when plaintiffs requested a due process hearing, the Hearing Officer dismissed the case on grounds that the matter presented a child find issue, and explained that "FAPE is not an issue, but rather, the Student's identification and eligibility to receive special education services is, thereby rendering the Board an improperly named party[,]" depriving the hearing officer of jurisdiction. 2013 WL 4834440, at *13 (citation & footnote omitted).  Thus, plaintiffs were denied the opportunity for the due process hearing before

---

[16]The Court also noted the "impossible position of a school board that reasonably relied not only on its legal counsel, but also on a decision of a hearing officer, all of which, unbeknownst to the Board, were contrary to the governing law at that time." Id. at *13, n.21.

[17]There has been a repeated disconnect between how defendant perceives this case, and both what Judge Kravitz explained in his January 2009 telephone conference, and then ordered in his June 2009 remand order, and what the undersigned has held in the September 2013 Ruling.

[18]As discussed above, the 2008 case before Judge Kravitz is incorporated into Count Three of plaintiffs' Complaint in this action.

the entry of the remand order, despite the fact that the request for the due process hearing was dismissed contrary to the governing Second Circuit law, even before the U.S. Supreme Court decided <u>Forest Grove</u>.  In this vein, plaintiffs "succeed[ed] on [a] significant issue in [the] litigation which achieve[d] some of the benefit the parties sought in bringing suit." <u>Hensley</u>, 461 U.S. at 433 (citation, internal quotations & footnote omitted).

Thus, in light of the unusual circumstances in this case, plaintiffs are entitled to fees and costs for the period up to and including the remand order by Judge Kravitz on June 25, 2009, and those related to Count Three as alleged in this action, as Count Three is plaintiffs' claim from the 2008 case.  However, plaintiffs' claim for fees ends there.

Once the case was remanded, defendant proceeded with undue delay.  On August 31, 2009, just over two months following Judge Kravitz's remand order, the Hearing Officer concluded that the matter would proceed as a FAPE issue concerning whether M.A. should have been identified, and the hearing resumed on September 10, 2009.  September 2013 Ruling, 2013 WL 4834440, at *8 (citations & internal quotations omitted).  On October 27, 2009, the Hearing Officer granted defendant's request to hold a PPT.  (10/27/09 Hearing Tr. at 3-5)(the Hearing Officer stated on the record: "I think we need to recognize that the Board has offered the PPT . . . .").[19]  As defendant appropriately observes, the Hearing Officer did

_____

[19]Plaintiffs contend that the PPT meeting was convened "as a direct result of the administrative due process proceeding, as well as by judicial action, when this court remanded the case to the due process hearing officer." (Dkt. #73, at 13).  In support of their position that attorney's fees are proper on this issue, plaintiffs rely on the <u>J.C.</u> decision.  <u>J.C.</u> draws no similarities to the case at bar.  In that case, the student was suspended from school and scheduled for an expulsion hearing when the Board canceled the expulsion hearing, scheduled a PPT that determined that he suffered from an educational disability and his actions that led to his suspension were a manifestation of that disability, and then the PPT drafted an IEP that provided for all relief requested by the parents.  278 F.3d at 122.  The hearing officer rejected the PPT results as an official order that would expose the Board to liability for attorney's fees, treating the PPT as a settlement agreement.  <u>Id.</u>  The Second Circuit held that the student was not a prevailing party as the "catalyst theory" is "simply not viable" after <u>Buckhannon</u>, and the change from the IEP was "not judicially sanctioned, as required by <u>Buckhannon</u>." <u>Id.</u> at 124-25.  Thus, other than citing

21

not order defendant to do anything it was not already prepared to do  (Dkt. #79, at 9), nor did Judge Kravitz order a PPT when he entered the remand order.   20 U.S.C. § 1415(i)(3)(D)(ii) specifically provides: "Attorney's fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action . . . ."  Accordingly, this Court does not find that the PPT meeting was "convened as a result of an administrative proceeding or judicial  action[,]" so that attorney's fees for the time spent on the PPT meeting following the remand are not appropriate.

Similarly, attorney's fees are not appropriate for the time spent on the due process hearing that was ultimately obtained. Although this Court found in favor of plaintiffs on their procedural claims -- that the Board denied the Parent's request for an IEP meeting to determine M.A.'s eligibility for special education under the category of OHI, and that the Board failed to conduct any evaluations of M.A. to determine his eligibility for special education –  when the case was on remand from the 2008 case, a PPT was convened and M.A. was evaluated to determine his eligibility for special education services under the category of OHI, the result of which was that M.A. was found not eligible for such services. The finding that plaintiff was not eligible for special education services was upheld in the September 2013 Ruling, thereby disposing of plaintiffs' claim for tuition reimbursement.  As plaintiffs state, they "undertook the litigation administratively and judicially in order to have the defendants hold a PPT meeting, to have the child evaluated, and to have the defendants make a determination as to whether the child should be identified as other health impaired under the IDEA and placed accordingly[.]" (Dkt. #73, at 15-16).  Plaintiffs prevailed by

---

20 U.S.C. § 1415(i)(3)(D)(iii), this case does not support plaintiff's contention.

obtaining a remand order from Judge Kravitz, and by receiving a finding in their favor on Count Three of their Complaint in this case. Thus, while the remand order itself, as discussed above, changed the legal relationship of the parties, a finding of procedural violations in failing to hold a PPT and evaluate M.A. did not. The ultimate goal of the PPT, the evaluation, and the OHI determination was to find M.A. eligible for special education, and ultimately, eligible for reimbursement of tuition and expenses for Chase Collegiate for four years. Plaintiffs did not achieve that result. Therefore, in light of plaintiffs' achievement of prevailing party status on a very limited claim, the Court must now "exercise [its] equitable discretion . . . to arrive at a reasonable fee award, either by attempting to identify specific hours that should be eliminated or by simply reducing the award to account for the limited success of the plaintiff." Texas State Teachers Ass'n, 489 U.S. at 789-90 (citations omitted).

## 2. CALCULATION OF ATTORNEY'S FEES

The IDEA provides that fees awarded by the district court must be "reasonable" and "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(B)-(C). Attorney's fees in IDEA cases are calculated using the "lodestar" method, "whereby an attorney fee award is derived 'by multiplying the number of hours reasonably expended on litigation [by] a reasonable hourly rate.'" I.B. ex rel Z.B. v. New York City Dept. of Educ., 336 F.3d 79, 80 (2d Cir. 2003), quoting G.M. ex rel R.F. v. New Britain Bd. of Educ., 173 F.3d 77, 84 (2d Cir. 1999)(additional citation omitted). A "reasonable hourly rate" is determined by asking "whether 'the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" I.B., 336 F.3d at 80, quoting Blum v. Stenson, 465 U.S. 886, 895, n.11 (1984).

23

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." <u>Hensley</u>, 462 U.S. at 433.   Then the court must consider the "overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." <u>Id.</u> at 435.

Plaintiffs' counsel requests a total of $176,645 in attorney's fees, which is comprised of 502.7 hours of work, at a hourly rate of $350, and $700 in costs.  (Dkt. #73, at 18-19). However, as addressed in more detail in Section II.B.2.b <u>infra</u>, based upon plaintiffs' time sheets, plaintiffs' calculations are wrong, in that they are actually seeking 544.9 hours of work.

<u>a. HOURLY RATE</u>

As stated above, plaintiffs' counsel seeks an hourly rate of $350, and in support of this rate, she avers that she has been practicing for fourteen years in the area of special education, and offers the opinions of Anne Louise Blanchard and Winona Zimberlin, two attorneys in the field, who opine that plaintiffs' counsel's rate of $350 is appropriate for her time, experience, and geographic area.  (Stevenson Aff't ¶¶ 2-3, 7; Blanchard Aff't ¶¶ 2, 8-9; Zimberlin Decl. ¶¶ 2-3, 8). Defense counsel objects to this rate as "unjustified."  (Dkt. #79, at 12-14).

In her affidavit, plaintiffs' counsel cites three district court cases and six state court cases in which she served as lead counsel, "which demonstrate [her] expertise in the areas of representation[.]" (Stevenson Aff't ¶ 4).  The Court's review of the electronic docket sheets for these three district court cases reveals that plaintiffs' counsel withdrew the appeal of one and the other two cases settled. Like defense counsel, this Court was unable to locate any decisions of attorney fee awards for plaintiffs' counsel.  In August 2005, Attorney Blanchard

24

sought and was awarded an hourly fee rate of $250.  Ms. C. v. Plainfield Bd. of Educ., 382 F. Supp. 2d 347, 349 (D. Conn. 2005). At that time, Attorney Blanchard had fourteen years of experience in the special education field.  Id.  In March 2006, Attorney Zimberlin sought an hourly rate of $275, which was deemed excessive.  Lillbask v. State of Conn. Dept. of Educ., No. 3:97 CV 1202(PCD), 2006 WL 752872, at *5 (D. Conn. Mar. 17, 2006).  At that time, she had twenty-four years of civil litigation experience with twelve years practicing special education law.  Id. The late Senior U.S. District Judge Peter C. Dorsey concluded that based on her experience, as well as the affidavit of, inter alia, Attorney Blanchard, an award of an hourly rate of $200 was appropriate. Id.

Plaintiffs' counsel has a comparable number of years experience in the area of special education law to Attorneys Blanchard and Zimberlin at the time they were awarded hourly rates of $250 and $200 respectively.  In light of these awards, this Court finds that  plaintiffs' counsel's request of an hourly rate of $350 is excessive.  The Court, however, is also mindful of the fact that eight or nine years separate this action and the actions in which hourly fees of  $250 and $200 were awarded.   Thus, the Court concludes that based on plaintiffs' counsel's experience, which, while notable, only includes three other federal court matters, none of which went to judgment, and based on the affidavits of Attorneys Blanchard and Zimberlin and their past awards, an award of an hourly rate of $300 is appropriate in this case.

### b. NUMBER OF HOURS REASONABLY EXPENDED

As previously mentioned, in their motion, plaintiffs' counsel requests 502.7 hours and her  billing entries reflect three discrete time periods: (1) 131.4 hours, from April 5, 2007 through June 25, 2009, for the original administrative proceedings (Case No. 07-467) and the

2008 lawsuit before Judge Kravitz, 08 CV 857 (MRK); (2) 187.60 hours, from July 6, 2009

through September 15, 2010, for post-remand administrative proceedings (Case No. 09-552),

of which 8.6 hours were spent on the PPT and the balance of 179.0 hours was spent on the

due process hearing; and (3) 183.7 hours, from November 15, 2010 through December 29,

2013, on this federal lawsuit, 10 CV 1890 (JGM).   (Billing Stmt at 1-15; Dkt. #79, at 6).

Based upon plaintiffs' time sheets, plaintiffs' calculations are erroneous for the first and third

categories – the first category, for the period April 5, 2007 through June 25, 2009, should be

131.8 hours (instead of 131.4 hours), and the third category, for the period November 15,

2010 through December 29, 2013, should be 225.5 hours (instead of 183.7 hours), for a total

of 544.9 hours (instead of 502.7 hours).

In light of the conclusion reached in Section II.B.1. supra, plaintiffs' counsel is entitled

to reimbursement for all fees incurred up to and including Judge Kravitz's remand order in

the 2008 case.[20] Accordingly, plaintiffs' counsel is entitled to the 131.8 hours incurred from

April 5, 2007 through June 25, 2009.[21]   (Billing Stmt at 1-4).   As also set forth in Section

II.B.1. supra, plaintiff's counsel is not entitled to the 187.6 hours for the PPT hearing and due

process hearing upon remand.

However, determining the attorney's fees award for plaintiffs' success on Count Three

in this current action is not as straight-forward, when considering the remaining 225.5 hours

---

[20]Defendant contends that plaintiffs' counsel's requested hours are "excessive and were not reasonably expended on the litigation[,]" and the Court will address defendant's contentions accordingly; however, defendant does not take specific issue with any of the hours incurred pre-remand. (Dkt. #79, at 14-16).   Additionally, although defendant makes a general objection to "[m]any of [plaintiffs' counsel's] time entries" as "too vague," (id. at 15), this Court, after reviewing the 2007-June 2009 entries, concludes that a reduction of these hours is not warranted on this basis.

[21]See Table 4 infra.

expended on this lawsuit.  In this case, when plaintiffs have "achieved only partial or limited success, the product of hours reasonably expended on litigation as a whole times a reasonably hourly rate may be[,]" and in fact is, "an excessive amount."  Hensley, 462 U.S. at 436. "This [is] true even [though] . . . the . . . claims were interrelated, nonfrivolous, and raised in good faith."  Id.  As defendant appropriately notes, when plaintiffs first commenced this current action, they filed a six count complaint against the City of Torrington and the Torrington Board of Education.  (See Dkt. #1).  All of plaintiffs' claims against the City were dismissed early on in the case, and this Court declined to exercise supplemental jurisdiction over plaintiffs' state constitutional claims asserted in Counts Five and Six, thereby leaving the four counts remaining.  As discussed above, this Court has concluded that plaintiffs were prevailing parties for the purpose of awarding attorney's fees on Count Three only. Therefore, the Court will first address the hours that are clearly separate from pursuing this Count, and then this Court will reduce accordingly the hours incurred in the prosecution of the remaining claims in the Complaint.

Defendant is correct that plaintiffs' pursuit of the claims against the City of Torrington and the opposition to the motion to dismiss were unrelated to the administrative appeal, as are the hours expended on the constitutional and state statutory claims which are not compensable under the IDEA.  (Dkt. #79, at 14; see Billing Stmt at 10-11, Entries 3/18/11, 3/19/11, 3/20/11, 3/21/11,[22] 3/23/11, 3/24/11,[23] 4/20/11, 4/21/11, 4/22/11,  9/10/12; see Table 1.A. infra).

---

[22]The March 21, 2011 entry includes 0.7 hours for both the Motion to Dismiss and Motion for Default; since neither is being permitted, the full 0.7  hours are included here.

[23]Similarly, the March 24, 2011 entry includes 3.5 hours for both the Motion to Dismiss and Motion for Default; since neither is being permitted, the full 3.5 hours are included here.

As also pointed out by defendant (Dkt. #79, at 15), plaintiffs' counsel's hours for the motion for default (see Billing Stmt at 10-11, 13, Entries 2/16/11, 2/28/11, 3/20/11, 12/14/12, 12/17/12) are not compensable on two grounds: first, at the time plaintiffs filed this motion, defendants had a motion to dismiss pending, and that the Clerk of the Court denied plaintiffs' motion "in light of the motion to dismiss"; and second, even after plaintiffs' motion was denied, they moved for reconsideration, which Judge Arterton granted, but after consideration, she left the order of denial undisturbed as the docket sheet "clearly reflects that [d]efendants properly filed a motion to dismiss within the Court's scheduling deadlines." See 2013 WL 4834440, at *1, n.4 (citations & internal quotations omitted).  Additionally, plaintiffs' counsel filed a second motion for default in December 2012, which by order from this Magistrate Judge was met with the same fate. Id. at *2, n.6.  Plaintiffs' counsel cannot be compensated for these filings.  (See Table 1.B. infra).

Lastly as defendant argues (Dkt. #79, at 15), plaintiffs will not be compensated for her objection to defendant's Motion for Security of Costs and her objection to defendant's Motion for Extension of Time.  (See Billing Stmt at 10, Entries 1/8/11, 1/14/11, 2/17/11 & .2 hours from 3/9/11).  Accordingly, 40.2 hours are reduced from this Court's consideration entirely, as set forth in Table 1 infra:

### TABLE 1: EXCLUDED HOURS

| Category | Dates | Time Sought |
|---|---|---|
| A. Opposition to & Filings Related to Motion to Dismiss | 3/18/11 | 5.7 |
| | 3/19/11 | 4.0 |
| | 3/20/11 | 5.0 |

| | | |
|---|---|---|
| | 3/21/11 | 0.7[24] |
| | 3/23/11 | 3.0 |
| | 3/24/11 | 3.5[25] |
| | 4/20/11 | 3.4 |
| | 4/21/11 | 6.0 |
| | 4/22/11 | 1.6 |
| | 9/10/12 | 0.9 |
| SUBTOTAL | | 33.8 |
| | | |
| B. Motions for Default | 2/16/11 | 0.6 |
| | 2/28/11 | 0.3 |
| | 3/20/11 | 1.3 |
| | 12/14/12 | 2.2 |
| | 12/17/12 | 0.2 |
| SUBTOTAL | | 4.6 |
| | | |
| C. Objection to Motion for Security for Costs | 1/8/11 | 0.4 |
| | 1/14/11 | 0.5 |
| | 3/9/11 | 0.2[26] |
| SUBTOTAL | | 1.1 |
| | | |
| D. Objection to Motion for Extension of Time | 2/17/11 | 0.7 |

---

[24]See note 22 supra.

[25]See note 23 supra.

[26]In this entry, plaintiffs' counsel seeks .4 hours for consulting with client regarding the order of referral to this Magistrate Judge and the order denying the Motion for Security for Costs, so that the total time sought is reduced by half.

| SUBTOTAL | | 0.7 |
|---|---|---|
| TOTAL EXCLUDED HOURS | | 40.2 |

With respect to the remaining 185.3 hours (225.5 hours minus 40.2 hours), as defendant also correctly contends (Dkt. #79, at 15), plaintiffs' counsel's time on drafting motions for extension of time is reduced to .2 hours, as expending .3 or .4 hours on this task is excessive.  (Billing Stmt at 11-12, 14, Entries 1/3/12, 10/18/13, 11/26/13; see Table 3.A. infra).  However, contrary to defendant's position (Dkt. #79, at 14), plaintiffs are entitled to compensation for the hours spent on their motion to transfer/disqualify/recuse judge as Judge Kravitz specifically stated to counsel on the record that he was remanding the case and "if you are dissatisfied with the decision, either side, upon remand, you can refile here and you can ask for me if you would like, by saying it's a related case, and it will come to me[.]" (6/23/09 Hearing Tr. at 4; see Billing Stmt at 9, Entries 12/3/10, 12/6/10; see Table 3.C. infra).[27]

The remaining entries will be "reduce[d] . . . to account for the limited success" achieved in this litigation. As indicated in the procedural history above, plaintiffs' original complaint contained six counts, of which two were dismissed by Judge Arterton and plaintiffs are prevailing parties on only one count; plaintiffs' pursuit of the claims against the City of Torrington were unrelated to the administrative appeal, as are the hours expended on the constitutional and state statutory claims which are not compensable under the IDEA. Plaintiffs' entries on nine days in preparation for drafting the complaint (including research), drafting and editing the complaint, and related activities (Billing Stmt at 9-10, Entries

---

[27]As discussed below, these entries, however, are subject to the same reduction as the remaining entries, reflective of the "limited success" achieved in this litigation.

11/15/10, 11/19/10, 11/20/10, 11/21/10, 11/22/10, 11/28/10, 11/29/10, 12/1/10, 1/13/11)

total 31.4 hours; for these 31.4 hours, the Court will permit plaintiffs to recover for 1/6 of this

time (5.2 hours) and will deny recovery for 5/6 of this time (26.2 hours).  (See Table 3.B.

infra).

The remaining entries are found are on December 3 and 6, 2010, January 13, 2011,

March 9, 2011,[28] September 30, 2011 through November 16, 2011, January 3, 2012 through

February 29, 2012, November 14, 2012 through December 11, 2012, and December 22, 2012

through December 29, 2013.  Most of these entries prior to October 2013 were largely

expended on the preparation for, and completion of, the cross-motions for summary

judgment, which total 115.7 hours.  (Billing Stmt at 10-14).[29]  As the Court concluded in

---

[28]This entry has been reduced to 0.2 hours.  See note 26 supra.

[29]Table 2 shows the hours that have been included regarding summary judgment:

**TABLE 2: HOURS FOR SUMMARY JUDGMENT AND RELATED MATTERS**

| Dates | Time Sought |
|---|---|
| 12/3/10 | 1.2 |
| 12/6/10 | 0.3 |
| 1/13/11 | 0.3 |
| 3/9/11 | 0.2 |
| 9/30/11 | 0.3 |
| 10/3/11 | 0.2 |
| 10/27/11 | 4.5 |
| 10/28/11 | 3.4 |
| 10/29/11 | 1.0 |
| 11/16/11 | 1.0 |
| 1/3/12 | 0.2 |
| 2/29/12 | 0.3 |

Section I.B.2.a. supra, plaintiffs were prevailing parties on Count Three only, that is only one of the four counts. Thus, the Court will permit plaintiffs to recover for 1/4 of this time (28.9 hours) and will deny recovery for 3/4 of this time (86.8 hours).[30]

Lastly, the six entries regarding these two pending motions (Billing Stmt at 14-15, Entries 11/30/13, 12/20/13, 12/26/13, 12/27/13, 12/28/13, 12/29/13) total 37.5 hours.  The

| | |
|---|---|
| 11/14/12 | 0.4 |
| 12/3/12 | 7.5 |
| 12/4/12 | 7.0 |
| 12/5/12 | 6.5 |
| 12/6/12 | 6.0 |
| 12/7/12 | 5.4 |
| 12/8/12 | 4.5 |
| 12/9/12 | 6.0 |
| 12/10/12 | 3.4 |
| 12/11/12 | 2.0 |
| 12/22/12 | 6.0 |
| 12/27/12 | 7.3 |
| 12/28/12 | 7.0 |
| 12/29/12 | 7.5 |
| 12/30/12 | 8.0 |
| 12/31/12 | 6.5 |
| 1/9/13 | 5.3 |
| 1/10/13 | 4.5 |
| 9/10/13 | 2.0 |
| TOTAL | 115.7 |

[30]Defendant argues that plaintiffs' research hours "were extremely excessive." (Dkt. #79, at 14).  In light of the deep reductions here, the Court need not address this objection.

three entries that are devoted entirely to this Motion for Attorney's Fees (6.5 hours on 12/20/13, 8.0 hours on 12/26/13, and 2.5 hours on 12/27/13) are compensable, despite the fact that plaintiffs have not prevailed entirely on their fee application.  (See Table 3.D. infra). The one entry that relates solely to the Motion for Equitable Relief (8.5 hours on 12/28/13) is denied, because that motion has been denied.  (Id.). The two remaining entries concern both motions, but based upon plaintiffs' descriptions, the entry on November 30, 2013 is reduced from 3.0 hours to 1.0 hours  and the entry on December 29, 2013 is reduced from 9.0 hours to 2.0 hours, as regarding the Motion for Attorney's Fees.  (Id.).

These deductions are summarized in Table 3 infra:

## TABLE 3: REMAINING HOURS WITH REDUCTIONS

| Category | Dates | Time Sought | Time Allowed | Time Disallowed |
|---|---|---|---|---|
| A. Time Spent on Drafting Motions for Extension of Time | 1/3/12 | 0.4 | 0.2 | 0.2 |
|  | 10/18/13 | 0.3 | 0.2 | 0.1 |
|  | 11/26/13 | 0.3 | 0.2 | 0.1 |
| SUBTOTALS |  | 1.0 | 0.6 | 0.4 |
|  |  |  |  |  |
| B. Pursuit of Claims v. City of Torrington, hours expended on State constitutional and state statutory claims pre-dismissal | 11/15/10 | 2.5 | 31.4/6 = 5.2 | 31.4 x 5/6 = 26.2 |

| | 11/19/10 | 4.5 | | |
|---|---|---|---|---|
| | 11/20/10 | 3.0 | | |
| | 11/21/10 | 6.5 | | |
| | 11/22/10 | 7.0 | | |
| | 11/28/10 | 3.0 | | |
| | 11/29/10 | 2.8 | | |
| | 12/1/10 | 1.8 | | |
| | 1/13/11 | 0.3 | | |
| SUBTOTALS | | 31.4 | 5.2 | 26.2 |
| | | | | |
| C.  Hours spent on remaining litigation (Table 2) | Remaining dates (Table 2) | Total hours =115.7 | 115.7/4 = 28.9 | 115.7 x 3/4 = 86.8 |
| SUBTOTALS | | 115.7 | 28.9 | 86.8 |
| | | | | |
| D.  Hours spent on two pending motions | 11/30/13 | 3.0 | 1.0 | 2.0 |
| | 12/20/13 | 6.5 | 6.5 | 0.0 |
| | 12/26/13 | 8.0 | 8.0 | 0.0 |
| | 12/27/13 | 2.5 | 2.5 | 0.0 |
| | 12/28/13 | 8.5 | 0.0 | 8.5 |
| | 12/29/13 | 9.0 | 2.0 | 7.0 |
| SUBTOTALS | | 37.5 | 20.0 | 17.5 |
| TOTALS | | 185.6 | 54.7 | 130.9 |

Thus, "exercis[ing] . . . equitable discretion" after a thorough and careful review, the

Court finds that 186.5 hours (131.8 hours plus 54.7 hours) undertaken in this current

litigation are compensable, <u>Texas State Teachers Ass'n</u>, 489 U.S. at 789-90 (citations omitted), as illustrated in Table 4 <u>infra</u>.  Therefore, plaintiffs' counsel is entitled to an award of $**55,950 in attorney's fees**.  Additionally, plaintiffs' counsel is awarded the cost of the $350 filing fees incurred in filing the complaints in both the 2008 case and in this case, for a total award of **$700 for costs**.[31]  A summary appears in Table 4 below.

### TABLE 4: SUMMARY

|  | **HOURS COMPENSABLE** | **TOTAL AMOUNT** |
|---|---|---|
| Administrative Appeal Pre-Remand from the 2008 case | 131.8 | $39,540 |
| Hours Relating to Count Three (Table 3.A-C) | 34.7 | 10,410 |
| Hours Relating to Attorney's Fees (Table 3.D) | 20.0 | $6,000 |
| **TOTAL** | **186.5** | **$55,950** |
| **COSTS** |  | **$700** |

### III. CONCLUSION

For the reasons stated above, plaintiffs' Motion for Equitable Relief (Dkt. #70) <u>is granted in limited part and denied in large part</u>, and plaintiffs' Motion for Attorney's Fees (Dkt. #72) is **granted in part in the amount of $55,950 in attorney's fees and $700 in costs.**

---

[31]Defendant also argues that plaintiffs have not given "any indication" as to what the costs are.  (Dkt. #79, at 16). As pointed out by plaintiffs in their reply brief (Dkt. #82, at 8), the costs are clearly the two filing fees, of $350 each.

Dated this 3rd day of April, 2014, at New Haven, Connecticut.

 /s/ Joan G. Margolis, USMJ   
Joan Glazer Margolis
United States Magistrate Judge
